John **ALLEN**; Terry Smith,
Plaintiffs–Appellees,

v.

Ted **SAKAI**; Harold Falk; John Cabral; Clayton Frank; Adele Fujita; Leonard Gonsalves; Leiann Kaimikaua; Gary Kaplan; Gerald Mendiola; Cinda Sandin; Francis Sequiera; Laurence Shohet; William Oku; Malcolm Lee; Terrence Allen; and Ray Suenaga, in their official and individual capacities, Defendants–Appellants.

No. 93–16780.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 3, 1994.

Decided Nov. 15, 1994.

---

Steven S. Michaels, Glenn S. Grayson, Deputy Atty. Generals; Honolulu, HI, for defendants-appellants.

John L. Hill; Charles Schurter, Margaret Kivinski, Student Interns, Western State University Legal Clinic, Irvine, CA, for plaintiffs-appellees.

Before: FLETCHER, and FERNANDEZ, Circuit Judges, and SEDWICK,* District Judge.

FLETCHER, Circuit Judge:

Hawai'i state prison officials, defendants in a 42 U.S.C. § 1983 suit, appeal the denial of summary judgment on their claim of qualified immunity. We affirm.

* Hon. John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation.

## I

Terry Smith was transferred to the Special Holding Unit ("SHU")[1] of the Halawa High Security Facility ("HHSF")[2] after multiple disciplinary offenses ranging from counterfeiting documents to assault. Smith and others, proceeding *pro se*, filed a federal civil suit against various prison officials under 42 U.S.C. § 1983.[3] Defendants moved for summary judgment on the grounds that they enjoyed qualified immunity and that the plaintiffs had failed to state a claim for which relief could be granted. The magistrate recommended that the defendants' motion be granted on all of Smith's claims except his claims that defendants deprived him of sufficient outdoor recreation, the use of a pen, and access to photocopies. The district court issued a written order modifying the magistrate's findings but adopting his recommendation to deny defendants' motion for summary judgment as to Smith's remaining three claims. Defendants filed a timely appeal of the district court's order.

## II

■ Smith alleges that, for a six-week period during his longer confinement at SHU, the defendants violated his right to freedom from cruel and unusual punishment by providing him only 45 minutes per week of outdoor exercise. He also alleges that the defendants violated his right to access to the courts by depriving him of the use of a pen and photocopying services. The sole issue on appeal is whether the defendants were entitled as state officials at the summary judgment stage to dismissal on the ground of qualified immunity. Although a denial of summary judgment generally is not a "final order" over which this court has jurisdiction,

28 U.S.C. § 1291, a denial of qualified immunity may be reviewed under the collateral order doctrine. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985); *see generally Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We review de novo. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir.1993).

■ Defendants are entitled to qualified immunity only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Although a plaintiff must do more than offer conclusory allegations that the defendant violated a clearly established constitutional right, a public official is not entitled to qualified immunity when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

## III

■ Smith alleges that the defendants violated his right to freedom from cruel and unusual punishment by depriving him of adequate outdoor exercise. Phase I inmates were confined to their cells almost twenty-four hours per day. Although prison officials assert HHSF had a goal of providing Phase I inmates with five hours of access per week to the facility's outdoor recreation area, they admit that during a six-week period Smith was permitted outside of his cell for outdoor recreation only 45 minutes per week.

---

1. Inmates at HHSF were subdivided into four categories or "phases," each with its own housing area in the facility. All new inmates were assigned to Phase I and resided in SHU, where they encountered the harshest conditions of confinement found at HHSF. With good behavior, inmates could advance to other phases and correspondingly more tolerable housing conditions. Smith was a Phase I inmate during the entire period covered by this lawsuit.

2. On or about September 1991, the State of Hawaii converted HHSF into its special needs

facility. It is no longer a maximum security facility, and Smith no longer resides there. Therefore, Smith's claims are for damages only.

3. The original complaint alleged thirteen causes of action, and several new issues were raised in subsequent petitions for preliminary relief. During the lengthy course of this litigation, most of Smith's co-plaintiffs dropped out and several claims were dismissed. The only claims remaining on appeal concern alleged deprivations of Smith's constitutional rights.

Before the period in question, several circuits, including this one, had held that deprivation of outdoor exercise could constitute cruel and unusual punishment. *Spain v. Procunier*, 600 F.2d 189 (9th Cir.1979); *Davenport v. DeRobertis*, 844 F.2d 1310, 1314–15 (7th Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988); *Ruiz v. Estelle*, 679 F.2d 1115, 1151–52, *vacated in part, as moot*, 688 F.2d 266 (5th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); *Campbell v. Cauthron*, 623 F.2d 503, 507 (8th Cir.1980). This court recognized in *Spain* that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates." *Spain*, 600 F.2d at 199. We emphasized that the plaintiffs were in long-term incarceration where they were in continuous segregation, generally spending twenty-four hours each day alone in their cells. *Id.* Under those conditions, deprivation of outdoor exercise constituted cruel and unusual punishment. *Id.; see also Toussaint v. Yockey*, 722 F.2d 1490, 1493 (9th Cir.1984) (denial of outdoor exercise to inmates assigned to administrative segregation for over one year raised "substantial constitutional question").

Defendants' analogy to *LeMaire v. Maass*, 12 F.3d 1444, 1458 (9th Cir.1993), is flawed. In *LeMaire* we found no constitutional violation from a termination of the plaintiff's exercise privileges "for considerable periods of time" after he attacked two correctional officers with a weapon as he left the yard, then vowed to attack them again. Although Smith was placed in SHU at HHSF because of disciplinary infractions,[4] unlike the plaintiff in *LeMaire*, Smith did not lose his exercise privileges based on a determination by prison officials that he presented a "grave security risk when outside his cell" and that measures were necessary to deter violent behavior separating Smith from the rest of

the population in SHU. *See LeMaire*, 12 F.3d at 1458.

Here, the defendants acknowledge that they have a goal of providing five hours exercise per week and do not suggest that Smith poses particular problems in the exercise yard. Their only excuse is that logistical problems made it difficult to provide adequate exercise. According to the defendants, scheduling an inmate's time in the exercise yard was difficult because, for security reasons, inmates had to be accompanied to the recreation yard by a guard and only one inmate could use the recreation yard at a time. We recognize that the practical difficulties that arise in administering a prison facility from time to time might justify an occasional and brief deprivation of an inmate's opportunity to exercise outside. However, we cannot accept the defendants' excuses as justifying, as a matter of law at the summary judgment stage, the deprivation that took place here. *Cf. LeMaire*, 12 F.3d at 1458 (upholding denial of outdoor exercise to inmate representing "grave security risk"); *Hayward v. Procunier*, 629 F.2d 599, 603 (9th Cir.1980) (upholding temporary deprivation of outdoor exercise during "lockdown" initiated during a "genuine emergency"), *cert. denied*, 451 U.S. 937, 101 S.Ct. 2015, 68 L.Ed.2d 323 (1981).

Smith's incarceration in SHU was indefinite and therefore potentially long-term, and under admittedly "harsh" conditions. After *Spain* and *Toussaint*, it should have been apparent to defendants that they were required to provide regular outdoor exercise to Smith unless "inclement weather, unusual circumstances, or disciplinary needs made that impossible."[5] *Spain*, 600 F.2d at 199. We affirm the district court's denial of defendants' motion for summary judgment on Smith's Eighth Amendment claim.

---

**4.** We note that each of the plaintiffs in *Spain* had been charged with or convicted of violent acts in prison, including shared responsibility in an incident that resulted in the murder of three prison officers and two inmates. *Spain*, 600 F.2d at 192.

**5.** Defendants also argue that *Spain* is inapplicable to cases involving neither a complete nor long-term denial of outdoor exercise. They note

that the plaintiffs in *Spain* had been deprived completely of outdoor exercise for four years and as a matter of prison policy, whereas Smith's claim is that, for six weeks, he was permitted out of his cell only weekly. Although the length and severity of the alleged illegal conduct may be critical questions at trial, they are not dispositive at the summary judgment stage.

## IV

■ Defendants also maintain that they are entitled to summary judgment on the ground of qualified immunity on Smith's claims that they violated his right of access to the courts under *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Smith claims that prison officials denied him access by refusing to photocopy his court papers despite his willingness to pay and by providing only a pencil, rather than a pen.[6]

Both of Smith's right of access claims arise from his difficulties in filing papers in the state court in connection with his second attempt to obtain post-conviction relief. Smith's first petition for post-conviction relief had been denied. Proceeding *pro se*, Smith attempted to file a second petition for post-conviction relief. The court returned the petition because Smith did not submit two additional copies. Smith claims that this failure was due to the defendants' refusal to make photocopies for him at a later time. Smith was able to refile the petition pursuant to Hawaii Rules of Penal Procedure, Rule 40, which provides that a petition for post-conviction relief may be filed at any time after judgment. The state trial court ultimately dismissed the petition as meritless.

Smith attempted to appeal the dismissal. However, because his notice of appeal was completed in pencil rather than in "black ink" as required by Rule 3 of the Circuit Court Rules, the court returned it to Smith for correction. Smith did not refile the notice of appeal until the time period for doing so had expired, and the Hawaii Supreme Court ultimately dismissed the appeal because of Smith's failure to file a timely notice of appeal. Smith claims that HHSF's ban on pens caused his failure to use black ink on his first timely presented notice of appeal.

### A

■ At the time defendants allegedly deprived Smith of the use of a pen and access to photocopying, the Supreme Court had clearly established an inmate's right of access to the courts, including a right to services and supplies indispensable to filing court documents. *See Bounds*, 430 U.S. 817, 97 S.Ct. 1491; *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Although this court had not yet held that "some means of accurate duplication" is an essential component of an inmate's right of access to the courts, *see Gluth v. Kangas*, 951 F.2d 1504, 1508–10 (9th Cir.1991), other circuits had. *See, e.g., Jones v. Franzen*, 697 F.2d 801 (7th Cir.1983) (inmate states valid claim against prison officials if he shows that prison's photocopy policy impeded court access); *Johnson v. Parke*, 642 F.2d 377, 380 (10th Cir. 1981) (denial of photocopies unconstitutional to extent it actually infringed inmate's right of access to courts).[7]

Moreover, it does not require sophisticated "legal scholarship" to know that a plaintiff's access the courts could be hindered seriously by an inability to make multiple, accurate copies of legal documents. *See Ward v. County of San Diego*, 791 F.2d 1329, 1332 (9th Cir.1986) (public officials not charged with "the kind of legal scholarship normally associated with law professors and academicians," but with the knowledge of a reasonable person), *cert. denied*, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987).

Similarly, the defendants should have known that they had a duty to provide Smith

---

6. To the extent that Smith's claims rested on allegations that prison officials denied him *free* photocopies, the magistrate recommended that the defendants' motion for summary judgment be granted on this claim. In respect to the pen claim, during some of the time Smith was housed in SHU, the facility had a policy forbidding the use of pens by inmates except from 8:00 a.m. to 4:00 p.m. on weekdays. The magistrate determined that forty hours per week of pen use was sufficient to fulfill Smith's right of access to the courts and recommended that the district court grant the defendants' motion for summary judgment to the extent that Smith's claims rested on this policy. Smith did not object to these recommendations and does not appeal the district court's order adopting them.

7. In the absence of preexisting binding precedent within this circuit, this court "look[s] at all available decisional law including decisions ... of other circuits" to determine whether a plaintiff has shown that the illegality of a defendant's conduct should have been apparent when it occurred. *Tribble v. Gardner*, 860 F.2d 321, 324 (9th Cir.1988), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989).

with a pen for preparing court documents. The Supreme Court had recognized prison officials' "indisputable" duty to provide inmates access to "paper and pen to draft legal documents." *Bounds*, 430 U.S. at 824, 97 S.Ct. at 1496. Although the defendants emphasize that their ban on the use of pens was necessary to fulfill legitimate penological interests,[8] *Bounds* makes clear that an inmate's right of access to the courts is "fundamental" and places upon prison officials an "affirmative obligation[ ] to assure all prisoners meaningful access to the courts." 430 U.S. at 828, 824, 97 S.Ct. at 1498, 1496. Although the state may "choose among the avenues of access," the avenue it chooses must "satisfy its constitutional obligation" under *Bounds*. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir.1981).

Hawaii's Circuit Court Rule 3(a) requires that all "handwritten entries on papers shall be in black ink," and defendants concede that this mandate was "clear and explicit" and provided no exceptions. In light of the clarity of the pre-existing law, it should have been apparent to the defendants that a ban on the use of pens would seriously hamper an inmate's access to the courts and therefore constitute a violation of his rights under *Bounds*.[9]

Apparently, defendants initially thought Smith had refused the assistance of the Public Defender's office. However, they essentially concede on appeal that Smith sought assistance but that the office declined to represent him. Thus any reliance defendants seek to place on *Storseth*, which held that a prisoner had not been denied access if he had rejected counsel, is misplaced. Absent evidence that Smith voluntarily and knowingly waived the assistance of counsel, the defendants are not excused from providing Smith the tools required to have meaningful access to the courts as a *pro se* litigant.

**B**

■ Defendants also urge that to defeat their motion for summary judgment on the ground of qualified immunity, Smith must allege that the denial of photocopying services and the use of a pen actually prejudiced his right of access to the courts. *See Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir.1989) (plaintiff asserting "non-core" violation of *Bounds* must allege "actual injury" to court access).[10]

We disagree. The Supreme Court recognized in *Mitchell* that "qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct" so "a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated." 472 U.S. at 527–28, 105 S.Ct. at 2816. The Court stated explicitly that "an appellate court reviewing the denial of the defendant's claim of immunity need not ... determine whether the plaintiff's allegations actually state a claim." *Id.* at 528, 105 S.Ct. at 2816.[11]

We agree with the district court that Smith's allegations are adequate to defeat

8. They maintain that inmates have used pens as weapons, to conceal contraband, and to tattoo themselves. Pencils, on the other hand, cannot be used to tattoo or to conceal contraband, and guards can reduce their effectiveness as weapons by controlling their length.

9. Defendants argue that pens and photocopies were not necessary for Smith to have meaningful access to the courts, despite the fact that both the "black ink" and multiple copies requirements were explicit and provided no clear exceptions. Defendants would require Smith to move the trial court to exempt him from the requirement or seek a writ of mandamus from the Hawaii Supreme Court ordering the Court Documents Supervisor to file his notice of appeal. They argue that the state courts should be expected to be "solicitous of inmate litigation" and therefore willing to exempt an inmate from procedural

rules that are difficult to meet in light of prison regulation. These arguments, however, seem to confirm that the complete denial of a pen and photocopies made it "very difficult or impossible" for Smith to exercise his right to court access. *See Johnson v. Parke*, 642 F.2d 377, 380 (10th Cir.1981).

10. They also argue that to establish injury Smith must show that his second petition for postconviction relief and his appeal of its dismissal had merit.

11. The district court in fact determined that Smith alleged an actual injury under *Sands* and therefore denied the defendants' motion to dismiss for failure to state a claim; however, we do not review that determination in this interlocutory appeal.

summary judgment: he has alleged conduct on the part of defendants that, if true, violates clearly established constitutional rights, defeating defendants' claims to qualified immunity at the summary judgment stage. Whether Smith ultimately establishes his claims of actual injury and damages is another matter.[12]

## V

Smith has alleged facts which, if true, would establish that the defendants violated clearly established law defining Smith's right to outdoor exercise and his right to access the courts. The district court's denial of defendants' motion for summary judgment is affirmed.

AFFIRMED.

---

**12.** This case, of course, differs from *Act Up!/Portland*, 988 F.2d at 871–74, where the questions before the court involved the defendant's conduct and a reasonable officer's belief about the conduct. Here the ultimate result of the conduct is in dispute—*viz*, what injury, if any, did the conduct lead to.