**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRANK MARVIN PHILLIPS,
*Plaintiff-Appellee,*

v.

LYNN HUST, Library Staff,
*Defendant-Appellant.*

No. 04-36021

D.C. No.
CV-01-01252-ALH

OPINION

On Remand From The Supreme Court of the United States

Filed December 2, 2009

Before: Dorothy W. Nelson, Diarmuid F. O'Scannlain, and
Sidney R. Thomas, Circuit Judges.*

Opinion by Judge O'Scannlain

---

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

15745

## COUNSEL

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Rolf C. Moan, Supreme Court Coordinator, Salem, Oregon, filed the post-Supreme Court remand brief for the appellant.

Frank Marvin Phillips, pro se, Salem, Oregon, filed the brief for the appellee.

## OPINION

O'SCANNLAIN, Circuit Judge:

We consider whether a prison librarian is entitled to qualified immunity from suit alleging a constitutional tort for hindering an inmate's ability to comb-bind a petition for a writ of certiorari to the Supreme Court of the United States.

### I

### A

Frank Marvin Phillips was convicted of second-degree manslaughter. While in prison, Phillips brought ineffective assistance of counsel claims in state court. The state courts rejected Phillips's suit, reasoning that any error on counsel's part did not affect the outcome of the trial. Phillips intended to seek review in the Supreme Court of the United States.

After drafting his petition for a writ of certiorari, Phillips sought to comb-bind the petition in the prison library. The Supreme Court's rules require such a petition to be stapled or bound at the upper left-hand corner. They do not require comb-binding. Nevertheless, on June 3, 2001, fifteen days before the petition was due, Phillips sent an inmate communication (a "kite") to a "Ms. Fendley" requesting access to the comb-binding machine. Five days later, Phillips was called to the library for the purpose of binding his petition for certiorari, but the comb-binding machine was unavailable.

On June 11, a week before the deadline, Phillips sent another kite to Lynn Hust, the prison librarian. The kite read:

"I have a brief that needs to be bound and sent soon. Please schedule me for any MORNING to briefly use the comb punch (1 hour will do.)." Phillips's letter did not inform Hust of the impending deadline. Hust received the kite by June 13. On June 18, the filing deadline, Hust rejected Phillips's request to use the machine.

Upon receiving Hust's response, Phillips sent an emergency letter to Hust's supervisor requesting access to the machine. The supervisor granted the request on June 25, one week after the petition was due. Phillips comb-bound the petition on June 29, but the Supreme Court rejected it as "out of time."

B

Phillips sued Hust under 42 U.S.C. § 1983, claiming that her failure to allow him access to the comb-binding machine violated his First Amendment right of access to the courts.[1] The United States District Court for the District of Oregon granted summary judgment to Phillips and, after a bench trial, awarded him $1500 in compensatory damages.

Hust appealed, and a three-judge panel of this court affirmed. Applying the two-step procedure required by *Saucier v. Katz*, 533 U.S. 194 (2001), the panel majority concluded that Hust's actions denied Phillips his right of access to the courts and that Hust was not entitled to qualified immunity because the right was clearly established at the time Hust acted. *Phillips v. Hust*, 477 F.3d 1070 (9th Cir. 2007). Judge O'Scannlain dissented.

Subsequently, a judge called for rehearing en banc. After a vote, the full court denied Hust's petition for rehearing en banc. Chief Judge Kozinski, joined by nine other judges, dis-

---

[1]Phillips also brought other claims not at issue in this appeal.

sented from the denial of rehearing en banc. *Phillips v. Hust*, 507 F.3d 1171 (9th Cir. 2007).

Hust then filed a petition for a writ of certiorari in the Supreme Court of the United States. The Court granted the petition, vacated our three-judge panel opinion, and remanded for reconsideration in light of *Pearson v. Callahan*, 129 S. Ct. 808 (2009).[2]

II

A

We are confronted with two questions in this remanded case. First, did Hust's actions violate the Constitution? Second, assuming a constitutional violation, is Hust nevertheless entitled to qualified immunity because the relevant constitutional right was not "clearly established" at the time she acted?

[1] Until this year, the Supreme Court required us to resolve those issues in a rigid two-step "order of battle." That is, we were required, first, to determine whether the defendant's actions violated a constitutional right and second, whether that right was clearly established. *See Saucier*, 533 U.S. at 200. The so-called "*Saucier* two-step" was designed to promote the Constitution's "elaboration from case to case" and to prevent "constitutional stagnation," but generated considerable criticism from academics and judges.[3]

---

[2]In a memorandum disposition filed concurrently with this opinion, we dismiss appeal No. 07-36082, with which this case was consolidated, as moot.

[3]*See, e.g.*, *Purtell v. Mason*, 527 F.3d 615, 622 (7th Cir. 2008) ("This 'rigid order of battle' has been criticized on practical, procedural, and substantive grounds."); Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249, 1275 (2006) (referring to the *Saucier* rule as "a puzzling misadventure in constitutional dictum, com-

**[2]** Earlier this year, perhaps hearing the criticism, the Court reversed course. Noting that the *Saucier* "procedure sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case," the Court abandoned the rigid two-step order of battle. *Pearson*, 129 S. Ct. at 818. The Court explained that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." *Id.* Rather, "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* Thus, if we see fit, we may now skip the first step of the *Saucier* analysis and proceed directly to the qualified immunity question.

## B

Keeping *Pearson* in mind, we turn to the case now before us.

### 1

**[3]** This case is about the First Amendment right of access to the courts. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828.

---

manded by the Supreme Court"). *But see* Paul W. Hughes, *Not a Failed Experiment:* Wilson-Saucier Sequencing and the Articulation of Constitutional Rights, 80 U. Colo. L. Rev. 401, 401 (2009) (defending the *Saucier* requirement on the ground that "mandatory sequencing is necessary for the robust articulation of constitutional rights by the lower courts").

**[4]** The Court subsequently made clear, however, that *Bounds* "guarantee[d] no particular methodology but rather the conferral of a *capability*—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey*, 518 U.S. 343, 356 (1996) (emphasis added). Moreover, there is a causation requirement: an inmate must show that official acts or omissions "hindered his efforts to pursue a [non-frivolous] legal claim." *Id.* at 351. *Lewis* recognized that the tools of litigation must be made available when *necessary* to ensure "meaningful access" to the courts. *Id.* (internal quotation marks omitted); *see also id.* at 365 (Thomas, J., concurring) ("[T]he majority opinion . . . places sensible and much-needed limitations on the seemingly limitless right to assistance created in *Bounds* . . . .").

**[5]** Thus, the conferral of a capability to bring a non-frivolous legal action does not require states to turn prisoners into litigating machines. As the Supreme Court explained in *Lewis*:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines . . . . The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 355 (majority opinion).

**[6]** Our precedents confirm the limited nature of the right recognized in *Bounds*. In *Lindquist v. Idaho State Board of Corrections*, 776 F.2d 851 (9th Cir. 1985), we held that a prison library need not contain the Pacific Reporter 2d, Shepard's Citations, and a number of other reference books. *Id.* at

856. We noted that *Bounds* did not require a prison to provide its inmates with "a library that results *in the best possible access to the courts*." *Id.* (emphasis added). Instead, what *Bounds* required was that the resources meet minimum constitutional standards sufficient to provide meaningful, though perhaps not "ideal," access to the courts. *Id.* We thus had no trouble also concluding that inmates had no right to a typewriter to prepare their legal documents where the court rules permitted pro se litigants to hand-write their pleadings.

**[7]** Contrast *Lindquist* with *Allen v. Sakai*, 40 F.3d 1001 (9th Cir. 1994). In that case, Allen's notice of appeal to the Hawaii Circuit Court was rejected because it was written in pencil and not ink. Allen claimed that the outright denial of a pen deprived him of access to the courts. We agreed, reasoning:

> Hawaii's Circuit Court Rule 3(a) requires that all "handwritten entries on papers shall be in black ink," and defendants concede that this mandate was "clear and explicit" and provided no exceptions. In light of the clarity of the pre-existing law, it should have been apparent to the defendants that a ban on the use of pens would seriously hamper an inmate's access to the courts and therefore constitute a violation of his rights under *Bounds*.

40 F.3d at 1006. *Allen* presented a stark example of how the complete denial of a "clear[ly]" necessary writing utensil—specifically mentioned as a required tool by the *Bounds* court—could effectively deprive an inmate of his right of access to the courts. The result in *Allen* is thus unremarkable. *See Sands v. Lewis*, 886 F.2d 1166, 1169 (9th Cir. 1989) ("[We] have considered claims based on *Bounds*'s teaching that the State must provide 'indigent' prisoners with *basic supplies* which ensure that their access is 'meaningful.' In evaluating this latter type of claim, we have *declined to read* into the Constitution any specific minimum requirements beyond those

mentioned in *Bounds* itself." (emphases added) (citation omitted)); Or. Admin. R. 291-139-0005 (requiring prison officials to make available "*necessary* supplies for the preparation and filing of legal documents" (emphasis added)). Therefore, for Phillips to prevail, he must show that use of the comb-binding machine was necessary to allow him "meaningful access" to the courts.

2

Before answering that question, however, we pause to discuss *Pearson*'s impact on this case. Because the qualified immunity issue is straightforward, this is an appropriate case to bypass the more difficult question of whether Hust violated Phillips's constitutional rights. *See Pearson*, 128 S. Ct. at 818 ("There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right."). Moreover, this is a case "in which the constitutional question is so fact-bound that the decision [would] provide[ ] little guidance for future cases." *Id.* at 819. Thus, gladly exercising our newfound authority, we do not decide whether Hust's actions violated Phillips's constitutional rights. Rather, we proceed directly to ask whether Hust is entitled to qualified immunity.

C

**[8]** A state officer is not protected by qualified immunity where he or she has violated a clearly established constitutional right. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). Although the official's subjective intent is irrelevant, *Anderson*, 483 U.S. at 641, the information actually pos-

sessed by the officer is relevant to this determination. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

**[9]** *Lewis* made clear that the right at issue in a case such as this is not "an abstract, freestanding right to a law library or legal assistance." 518 U.S. at 351. Rather, the right vindicated by *Bounds* is a right of "meaningful access to the courts." *Id.* (internal quotation marks omitted). Thus, the precise question before us is whether a reasonable prison official would believe that denying access to the comb-binding machine would violate an inmate's right of meaningful access to the Supreme Court of the United States.

1

An understanding of the Supreme Court's rules is essential to answering this question. Rule 33.2 governs the form of documents to be filed with the Court. It provides that every document presented to the Court on 8½-by-11-inch paper "shall be stapled or bound at the upper left-hand corner." In turn, Supreme Court Rule 39.3 requires every document presented by a party proceeding in forma pauperis to be "prepared as required by Rule 33.2 (unless such preparation is impossible)." It further requires that the petition be legible, obviously expecting most filings to be handwritten. Finally, Rule 39.3 directs the Clerk to "mak[e] due allowance for any case presented under this Rule by a person appearing *pro se*."

We make three observations about the rules. First, while an initial reading suggests that stapling or binding is affirmatively required, Rule 39.3 provides an exception when such methods are not possible. Second, Rule 33.2 requires the staple or binding to be at the upper left-hand corner. The rule, by its terms, does not require comb-binding. Finally, Rule 39.3 specifically mandates leniency for pro se litigants, many of whom the Court is fully aware are indigent prisoners.

## 2

**[10]** In light of the Supreme Court's flexible rules for pro se filings, which do not require and perhaps do not even permit comb-binding, we have no difficulty concluding that Hust is entitled to qualified immunity. The record establishes that Hust was knowledgeable about filing requirements in courts. In her affidavit, Hust stated that in her expertise as a prison law librarian the courts accept pro se briefs without comb-binding. Her view that comb-binding was not required was reasonable, as the Supreme Court's flexible rules make plain.

**[11]** Thus, the "unlawfulness" of Hust's actions is simply not apparent. *Anderson*, 483 U.S. at 640. It was not an unreasonable reading of the rules of the Supreme Court to conclude that they do not require, nor even allow, the comb-binding of petitions. Furthermore, in light of the general tenor of *Lewis v. Casey* and our cases which have held that only basic legal supplies, and not unnecessary amenities, are to be provided to inmates, *see Sands*, 886 F.2d at 1170, Hust's denial of access was not "willfully blind" to the requirements of law. Accordingly, it was "objectively legally reasonable," *Anderson*, 483 U.S. at 641; *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir. 1993), for Hust to conclude that her denial of access to the comb-binding machine would not hinder Phillips's "capability" to file his petition.[4]

## 3

Additional information in the record confirms Hust's entitlement to qualified immunity. Despite Hust's unfamiliarity

---

[4]Furthermore, it is undisputed that Hust "even contacted Trent Axen, Law Librarian at the Oregon State Penitentiary (OSP) in Salem, Oregon, who has experience with this matter to confirm what [she] already knew. Mr. Axen confirmed that he does not bind inmate briefs and the court has accepted unbound inmate briefs." This type of reference to an outside, knowledgeable source confirms the reasonableness of Hust's actions.

with the explicit holding of *Lewis v. Casey*, she was clearly aware of her affirmative duty to aid inmates in the filing of legal documents.[5] She stated that her job was not to provide legal assistance to inmates, but instead to supervise inmates in accord with Oregon Department of Corrections ("ODOC") Administrative Rules. Those rules provide:

> Policy: Within the inherent limitations of resources and the need for facility security, safety, health and order, it is the policy of the Department of Corrections to satisfy its legal obligation to provide inmates meaningful access to the courts by affording inmates reasonable access to a law library or contract legal services, and to necessary supplies for the preparation and filing of legal documents . . . .

---

[5]The district court's reading of Hust's response to Phillips's interrogatory about *Lewis v. Casey* is clearly erroneous. The court found Hust to be "willfully blind" to the applicable law when she "denied" the statement that she was "somewhat familiar with *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)." That statement, when read in context, merely denies a precise knowledge of the *Lewis* case. It in no way suggests that Hust was "willfully blind" to the requirement that the basic supplies for litigation be afforded to inmates. Indeed, in the very same affidavit, Hust asserts that part of her duties is to supervise inmates "in accordance" with the ODOC Administrative Rules governing *"Legal Affairs (Inmate),"* which requires prison officials to make available "necessary supplies." The district court's reading is akin to requiring a state official, even one not required to be trained in the law, to be intimately familiar with the names and holdings of decided cases. We have never required so much. *See Cox v. Roskelley*, 359 F.3d 1105, 1115 n.1 (9th Cir. 2004) (citing *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 278 (2d Cir. 1999) ("The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct. The unlawfulness must be apparent.")). The context of Hust's statements makes clear that she was generally knowledgeable about what was required of her as a law librarian. Nothing more is required.

Or. Admin. R. 291-139-0005. That Hust was aware of this policy requiring her to aid in the preparation of legal materials is undisputed.

4

Finally, the delay in time responding to Phillips's request was not unreasonable based upon the information known to Hust at the time. *See Anderson*, 483 U.S. at 641 (noting that the determination of whether official action is objectively legally reasonable "will often require examination of the information possessed by" the state actor). Here, the undisputed record shows that the June 13 request which Phillips sent to Hust did not indicate the date which the petition was due.

III

Based on the foregoing, we are satisfied that Hust is entitled to qualified immunity.

We REVERSE the district court's grant of summary judgment to Phillips, and REMAND with instructions to grant Hust's motion for summary judgment based on qualified immunity.