**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRANK MARVIN PHILLIPS,
            *Plaintiff-Appellee,*

v.

LYNN HUST, Library Staff,
            *Defendant-Appellant.*

No. 04-36021

D.C. No.
CV-01-01252-ALH

OPINION

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, District Judge, Presiding

Submitted December 9, 2005*
Portland, Oregon

Filed February 13, 2007

Before: James R. Browning, Dorothy W. Nelson, and
Diarmuid F. O'Scannlain, Circuit Judges.

Opinion by Judge Browning;
Dissent by Judge O'Scannlain

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

1769

## COUNSEL

Hardy Myers, Attorney General, May H. Williams, Solicitor General, and Richard D. Wasserman, Attorney-in-Charge, Civil/Administrative Appeals Unit, Salem, Oregon, for the appellant.

Frank Marvin Phillips, pro se, Salem Oregon, for the appellee.

## OPINION

BROWNING, Circuit Judge:

In this case, we must decide whether the arbitrary denial by prison officials of access to materials the prison routinely made available to inmates for the preparation of legal documents constitutes a denial of an inmate's right of access to the courts where it results in the loss of a legal claim. We hold that it does.

Defendant-Appellant Lynn Hust appeals the grant of summary judgment in favor of Plaintiff-Appellee Frank M. Phillips, Jr. on his claim under 42 U.S.C. § 1983, and the denial of her motion for summary judgment asserting qualified immunity. In addition, Hust appeals the district court's damages award.

We have jurisdiction under 28 U.S.C. § 1291 over this appeal of the final judgment of the district court. We affirm the grant of summary judgment to Phillips and the denial of Hust's qualified immunity claim, and we remand the case to the district court to make further factual findings concerning its award of damages.

## I.

Phillips was convicted in state court of second degree manslaughter and sentenced to an indeterminate term of ten years imprisonment, with a minimum sentence of five years for using a firearm during the commission of the offense. Phillips completed his sentence, and was subsequently incarcerated for other crimes. Phillips sought state court post-conviction relief challenging his manslaughter conviction on the grounds that he received ineffective assistance of counsel. After exhausting his appeals in state court, he intended to seek review of his claim in the United States Supreme Court, where he hoped to show that the state courts had violated the Constitution by applying a preponderance of the evidence standard in finding that any ineffective assistance he received did not affect the outcome of his criminal trial.

Phillips's petition for certiorari had a filing deadline of June 18, 2001. On June 3, 2001, Phillips sent an inmate communication (a "kite") directed to "Ms. Fendley" requesting access to the comb-binding machine. Phillips had in the past been permitted to use the comb-binder to bind a brief to the Oregon Supreme Court. In addition, Phillips had already partially comb-bound his petition, and he was seeking access to

the comb binder in order to insert an additional 40 pages. He was called to the library on June 8, 2001 for the purpose of binding his petition for certiorari, but the comb-binding machine had been moved, and he was unable to bind the petition on that date. Three days later, on June 11, 2001, Phillips sent another kite directed to "Ms. Rossi/Hust" stating that "I have a brief that needs to be bound and sent soon. Please schedule me for any MORNING to briefly use the comb punch (1 hour will do.)." This kite did not inform Hust of the filing deadline or that the document Phillips wished to bind was a petition for writ of certiorari to the Supreme Court. Hust received the kite no later than June 13, 2005. On June 18, the day Phillips's cert. petition was due, Hust responded "[w]e do not comb bind materials for inmates." Evidence in the record showed that the usual response time for such kites was 1 to 2 days. In a sworn statement, Hust asserted that prison rules in effect at the time did not permit inmates to comb bind their own materials, and that in the past, inmates had been permitted to submit filings bound with a staple or unbound. Nevertheless, upon receiving this response from Hust, Phillips sent a kite to Hust's supervisor, Program Services Manager Gilmore, with the inscription "Legal Emergency" at the top and requesting access to the comb binder. Gilmore granted this request on June 25, one week after Hust had denied Phillips access to the comb-binder. Hust did not permit Phillips to enter the law library until June 29, 2001, at which time he comb punched his materials, bound his petition, and filed it with the Supreme Court. The Supreme Court rejected the petition as "out of time."

Phillips and Hust had a history of strained relations resulting from an incident in which Phillips, in violation of prison policy, used a prison typewriter to draft a letter to the West Group to inquire about some advance sheets missing from the library's collection. Misinterpreting Phillips's letter as a request for replacement advance sheets, West mailed duplicates to the prison library. Hust initiated disciplinary proceedings against Phillips charging him with Unauthorized Use of

a Computer II, Mail Fraud, Disobedience of an Order II, Forgery, Disrespect III, and Extortion II. All of these charges, classified as major, were rejected by the hearing officer, who found him guilty only of a minor violation, Disobedience of an Order III for unauthorized use of the typewriter.

On April 4, 2002, Phillips brought suit in the United States District Court for the District of Oregon alleging three causes of action under 42 U.S.C. § 1983, one for impeding his right to freely associate, communicate, and correspond with others relating to Hust's initiation of disciplinary proceedings, one for Hust's violation of Phillips's right of access to the courts, and one for retaliation relating to her denial of access to the comb binder. In mid-August 2002, both parties filed motions for summary judgment, which the district court treated as cross-motions. The district court granted Phillips's summary judgment motion on March 31, 2003, as to his right of access to the courts claim as to liability, and denied it as to his other claims. The court reserved the issue of damages for Phillips's access to the courts claim for trial. In the same order, the district court denied Hust's summary judgment motion. Subsequently, the parties settled Phillips's other two claims.

The court held a bench trial on September 20, 2004 on the damages issues. At the trial, Phillips sought non-economic damages, essentially mental and emotional distress, as well as economic damages in the amount of his costs and expenses in the state court post-conviction proceedings he was attempting to appeal to the Supreme Court. In addition, he sought punitive damages. On September 29, the court entered its findings of fact and conclusions of law awarding Phillips $1500 in compensatory damages, but denying punitive damages. In regards to Phillips's request for the costs of the state court proceedings, the court observed the proper time for seeking such costs was after the entry of judgment via a bill of costs. The district court entered its final judgment on September 29, 2004. On October 18, 2004, Phillips submitted a bill of costs. The district court denied the request for costs on November

18, 2004, on the grounds that Phillips sought to recover only the costs of his state court post-conviction relief action, which the district court held were not available as costs in the present action, and which the court further stated had been awarded as part of compensatory damages.

## II.

We review *de novo* the district court's decision on cross motions for summary judgment. *Parents Involved in Cmty. Schools v. Seattle School Dist. No. 1*, 426 F.3d 1162, 1172 n.11 (9th Cir. 2005) (en banc). Our review is governed by the same standard used by the trial court under Fed. R. Civ. P. 56(c). *Suzuki Motor Corp. v. Consumers Union, Inc.*, 330 F.3d 1110, 1131 (9th Cir. 2003). Under Rule 56(c), we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

**[1]** Under the First and Fourteenth Amendments to the Constitution, state prisoners have a right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). "[A]ccess to the courts means the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty." *Id.* at 384 (quoting *Hatfield v. Bailleaux*, 290 F.2d 632, 637 (9th Cir. 1960)). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).

Where a prisoner asserts a backward-looking denial of access claim — one, as here, seeking a remedy for a lost opportunity to present a legal claim — he must show: 1) the loss of a "nonfrivolous" or "arguable" underlying claim; 2)

the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. *See Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002).

## A.

**[2]** The first element, requiring the loss of a nonfrivolous underlying claim, goes to the plaintiff's standing to bring suit. To have standing to assert a claim of denial of access to the courts, an inmate must show "actual injury." *Lewis*, 518 U.S. at 351. In order to establish actual injury, the inmate must demonstrate that official acts or omissions "hindered his efforts to pursue a [nonfrivolous] legal claim." *Id.* at 351, 353, 353 n.3.

**[3]** Here, Hust's refusal to allow Phillips access to the comb-binding machine hindered Phillips's ability to timely file his petition for certiorari seeking review of his state court post-conviction relief action. This action resulted in the petition being rejected as untimely and thus caused "actual prejudice with respect to contemplated or existing litigation." *Id.* at 348.

We reject Hust's argument that Phillips's post-conviction claims were frivolous. Phillips's petition for certiorari presented the issue, *inter alia*, whether the state court, in finding that Phillips's counsel committed no errors that "would have produced a different result" in his trial, applied a preponderance of the evidence standard in violation of U.S. Supreme Court strictures. While the state court recited the correct standard, it is certainly arguable, based upon the language of the court's opinion, that it did not apply it. Accordingly, Phillips's petition for certiorari was not frivolous.

**[4]** Hust further contends that in order to show that his legal claims were not frivolous, Phillips must establish not only that the claims have merit, but also that they meet one of the

criteria for certiorari specified in the Supreme Court's Rule 10. Rule 10, however, clearly indicates that the delineated criteria do not control or provide the measure of the Court's discretion in granting certiorari. We will not presume to speculate what the Supreme Court might in its discretion have done had it been presented with a timely petition. For similar reasons, we have held that, in order to establish actual injury, a plaintiff "need not show, ex post, that he would have been successful on the merits had his claim been considered." *Allen v. Sakai*, 48 F.3d 1082, 1085 (9th Cir. 1994). We think it equally apparent that where the suit underlying an access to the courts claim was to be brought in a court having discretionary jurisdiction, the plaintiff need not establish, ex post, that the court would have exercised its discretion and accepted the case. *Cf. Gentry v. Duckworth*, 65 F.3d 555, 559 (7th Cir. 1995) (plaintiff adequately alleged actual injury where state court retained discretion to address post-conviction claims notwithstanding that claims had been procedurally defaulted).

## B.

**[5]** Under *Harbury*'s second element, Phillips must show that Hust's denial of use of the comb-binding machine frustrated his attempt to press his claim in the Supreme Court. In other words, as in any § 1983 case, Phillips must show that the alleged violation of his rights was proximately caused by Hust, the state actor. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). The touchstone of proximate cause in a § 1983 action is foreseeability. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*, 216 F.3d 764, 784-85 (9th Cir. 2000) (citing *Arnold v. IBM Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981)).

**[6]** Hust argues that Phillips cannot show that her actions caused the late filing of Phillips's petition because he could have used an alternate means of binding his petition for cer-

tiorari or he could have submitted the petition unbound. We think this contention misses the point. Even if Hust's actions were not an insurmountable obstacle to Phillips's attempt to assert his claim, Hust effectively prevented Phillips from filing his cert. petition by arbitrarily and selectively denying him access to the comb-binding machine.

**[7]** The Constitution requires that prison officials make it possible for inmates to prepare, file, and serve pleadings and other documents essential for pleading their causes. *Lewis*, 518 U.S. at 346. Of course, the Constitution does not demand that any means of preparation selected by the inmate be made available, so long as the inmate has some means of preparing documents that comply with the rules of the court in which his case is pending. Thus, we have held that inmates have no right to a typewriter to prepare legal documents where court rules permit pro se litigants to hand-write their pleadings. *Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 858 (9th Cir. 1985) (citing *Twyman v. Crisp*, 584 F.2d 352, 358 (10th Cir. 1978)). Nevertheless, it remains true that *some* means of preparing legal documents, including a means of binding them where required, must be made available.

**[8]** Here, the uncontradicted evidence in the record indicates that, despite any alleged policy to the contrary, comb-binding was the method the department routinely made available to Phillips on every occasion except the one at issue here. Whether or not the department had a policy prohibiting inmates from using the comb-binder or prohibiting library staff from comb-binding inmate documents is irrelevant. Such a policy, if indeed it existed, was either routinely not enforced or was enforced intermittently and arbitrarily at the caprice of the individual official responding to a request for access.

**[9]** We have held that an inmate's constitutional rights, including the right of access to the courts, may be violated by the arbitrary and selective enforcement of otherwise valid policies. For example, in *Baumann v. Arizona Dept. of Correc-*

*tions*, 754 F.2d 841, 845 (9th Cir. 1985), the state denied an inmate a work furlough on the grounds that the policy establishing his eligibility was not part of a published regulation as required by state law. We held that, although the publication requirement was otherwise valid, "the state cannot arbitrarily deny privileges based on the lack of regulations if it grants privileges under unfiled regulations to other prisoners." *Id.* We held that such selective enforcement of regulations could constitute a violation of the inmate's due process rights if it resulted in a deprivation of a prisoner's liberty interests. *Id.* Similarly, in *Gluth v. Kangas*, 951 F.2d 1504, 1508 (9th Cir. 1991), we held that arbitrarily denying access to a prison library despite space availability could constitute a violation of the right of access to the courts, even if the regulations governing access were arguably facially valid.[1] In more general terms, "practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Leeds v. Watson*, 630 F.2d 674, 676 (9th Cir. 1980).

[10] Hust has offered no justification for the enforcement of the regulation restricting access to the comb-binder on June 18 but not on any other occasion. Moreover, it was entirely foreseeable that this arbitrary denial would obstruct Phillips's ability to prepare his petition and file it in a timely manner. Hust's refusal to permit Phillips to use the comb-binder on June 18, when he was permitted to use it on numerous occasions both before and after that date, and when he had, so far as the record reveals, never before been denied access to it, quite predictably interfered with his efforts to prepare his peti-

---

[1]Other circuits have looked with similar disfavor on the arbitrary enforcement of valid regulations. *See*, *e.g.*, *Reed v. Faulkner*, 842 F.2d 960, 964 (7th Cir. 1988) (holding selective enforcement of hair length rules against some groups asserting religious exemption but not others could constitute violation of equal protection, despite the general validity of the rules).

tion for certiorari and thereby violated his right of access to the courts.[2]

**[11]** That Hust was unaware of the deadline for the filing or the court in which the document was to be filed does not affect this result. It was entirely foreseeable that denying Phillips access to the comb-binder inconsistently with well-established past practice would interfere with Phillips's ability to file the document in *any* court.

We are similarly unpersuaded by Hust's contention that her actions did not deny Phillips's right of access to the courts because the Supreme Court's rules do not require comb-binding. As the district court observed, the rules are less than clear as to whether some form of binding is required in the circumstances presented in this case, where Phillips's petition was too long for stapling, the method specified in the rules. Although Hust's suggested interpretation—that the rule permits the filing of unbound petitions where stapling is impossible—may be one reasonable view of the rule, it is not the only reasonable interpretation. Thus, Hust's refusal to allow Phillips to use the comb-binder placed him in the untenable position of having to decide whether to file the petition on the date it was due in the hopes that it would be accepted unbound or partially bound, or to wait until he could bind the petition in the hopes that it would be accepted late. Because it was Hust's actions that placed Phillips in the position of having to make this choice, she cannot now make the complaint—highly speculative in any event—that Phillips made the wrong choice.

---

[2]In so concluding, we do not hold that inmates have the right to comb-binding equipment, or, indeed, to any particular method of binding documents, so long as they are able to meet the filing requirements of the courts in which they are litigating their claims. Rather, we simply reach the unexceptional conclusion that otherwise valid prison policies may not be selectively or arbitrarily enforced in such a way as to interfere with prisoners' access to the courts to pursue litigation arising from their incarceration.

C.

**[12]** Phillips also satisfies *Harbury*'s third requirement that the plaintiff have no other remedy than the relief available in his denial of access suit. Unlike the plaintiff in *Harbury*, Phillips has no independent tort cause of action against Hust for the violation of his rights. Moreover, even if state law permitted Phillips to file a successive post-conviction relief suit, such a suit could not provide the relief Phillips seeks here, namely compensation for the expense and effort of the earlier litigation, for which any hope of vindication, however slim, was lost as a result of the untimely filing of his petition for certiorari.

**[13]** For these reasons, Hust's arbitrary denial of access to the only practicable binding materials available in the prison library, and contrary to the prison's established past practice, violated Phillips's right of access to the courts. Accordingly, we affirm the district court's grant of summary judgment to Phillips.

### III.

Hust contends that, even if her actions amounted to a violation of Phillips's rights, the right was not clearly established, and she is therefore entitled to qualified immunity. We disagree.[3]

**[14]** Qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, the Supreme Court set out a two step inquiry in determining whether an official has qualified immunity. 533 U.S. 194, 201 (2001). First, "taken in the light most favorable to the party

---

[3]The district court, too, rejected Hust's claim of qualified immunity. We review its decision *de novo*. *Elder v. Holloway*, 510 U.S. 510, 516 (1994).

asserting the injury, do the facts show the officer's conduct violated a constitutional right?" *Id.* Second, the court must "ask whether the right was clearly established. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer his conduct was unlawful in the situation he confronted." *Id.*

**[15]** Here, we have held that Hust violated Phillips's right of access to the courts when she arbitrarily denied him access to the comb-binder contrary to the consistent practice of the prison both before and after the event at issue, satisfying *Saucier*'s first prong.

Hust argues that Phillips's right of access to the courts was not clearly established in this instance because no case specifically requires that prison officials must provide comb-binding to inmates filing petitions with the Supreme Court. Whether the right at issue in a claim of qualified immunity is clearly established is judged as of the date of the incident alleged and is a pure question of law, which we review *de novo. Act Up!/Portland v. Bagley*, 988 F.2d 868 873 (9th Cir. 1993). In *Saucier*, the Supreme Court held that the "clearly established" inquiry "must be undertaken in light of the specific context of the case." 533 U.S. at 201. Hust's contention, however, takes this requirement to an absurd level, which is contrary to *Saucier*'s observation that when "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand, the officer would not be entitled to qualified immunity." *Id.* at 202-03. Here, faced with the Supreme Court's decision in *Lewis* and *Bounds*, and numerous prior and subsequent cases, a reasonable officer would know that failing to provide access to equipment and supplies needed in order "to prepare, serve and file" court documents would result in prisoners' claims being "dismissed for failure to satisfy . . . technical requirements" or would otherwise frustrate prisoners' litigation efforts. *See, e.g.*, *Lewis*, 518 U.S.

at 351, 384. Moreover, both our case-law and the law of other circuits holds that prison rules may not be enforced arbitrarily or selectively in such a way as to violate prisoners' constitutional or statutory rights, including the right of access to the courts. *Gluth*, 951 F.2d at 1508; *Baumann*, 754 F.2d at 845; *Reed*, 842 F.2d at 964. Thus, both the right of access to the courts and the right not to be subjected to arbitrary and selective enforcement of prison regulations were clearly established at the time of Hust's action.

The fact that no case has held specifically that prison officials must make comb-binders available does not render it reasonable to deny access to a comb-binder when that is the only means readily available at the facility for binding a legal pleading, and when it had been made available repeatedly on prior occasions, including just one week prior to the occasion at issue, leading to a reasonable expectation that it would be available in time for Phillips to file his petition.

**[16]** In addition, Hust did not deny access to the comb-binding machine because she reasonably believed that cert. petitions need not be bound. As Hust correctly notes, resolution of the qualified immunity question "will often require examination of the information possessed by the . . . official." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). As she acknowledges, she did not know that Phillips was filing a cert. petition. She simply issued a blanket refusal to permit access to the comb binder, regardless of the nature of the document or the rules of any court. Moreover, her refusal was blatantly contrary to past practice as well as state administrative regulations.[4] As the district court held, "a reasonable official in defendant's position should know that if her actions could

---

[4]Oregon Administrative Rule 291-149-0005 directly implemented the constitutional requirement, directing that "the Department of Corrections satisfy its legal obligation to provide inmates meaningful access to the courts by affording inmates reasonable access to . . . necessary supplies for the preparation and filing of legal documents with the court."

foreseeably result in causing an inmate plaintiff to miss a court filing deadline or violate a published court rule, thereby placing his claims in jeopardy of dismissal, such actions would be unlawful under the clearly established constitutional access to court standards set forth in *Lewis.*" Therefore, Hust was not entitled to qualified immunity from Phillips's access to the courts claim.

## IV.

Having determined that the district court properly granted summary judgment to Phillips on the question of liability, we must now address Hust's contention that the district court's award of damages was improper. A district court's computation of damages is a finding of fact that this Court reviews for clear error. *Amantea-Cabrera v. Potter*, 279 F.3d 746, 750 (9th Cir. 2002).

**[17]** The purpose of § 1983 damages is to provide compensation for injuries caused by the violation of a plaintiff's legal rights. *Memphis Com. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986). Accordingly, no compensatory damages may be awarded absent proof of actual injury. *Id.* at 308 ("Where no injury [is] present, no 'compensatory' damages [can] be awarded."). Moreover, "the abstract value of a constitutional right may not form the basis for § 1983 damages." *Id.* at 307 (citing *Carey v. Piphus*, 435 U.S. 247, 255 (1978)).

Hust argues that Phillips has not established that his lost post-conviction claim had any value, and that as a matter of law he may not recover the costs of the state-court proceedings. *Harbury*'s requirement that the remedy sought on a backward looking access to the courts claim must be one not available in some other lawsuit suggests that, where a claim has been irrevocably lost as a result of the constitutional violation, one possible measure of the remedy for the loss of access is the remedy which would have been available on the lost claim. *See Harbury*, 536 U.S. at 415, 415 n.13. Here, had

Phillips been able to present his claim to the Supreme Court, and had he prevailed in his efforts to overturn his state court conviction, he could have sought damages for, among other possible causes of action, wrongful imprisonment or malicious prosecution. In addition, the collateral civil consequences of overturning the conviction likely have a measurable economic value. Of course, such an outcome is somewhat speculative,[5] and in these circumstances, it would not be inappropriate for the court, in assessing the value of the lost claim, to evaluate the likelihood that the plaintiff would have prevailed in the underlying litigation. *See Simkins v. Bruce*, 406 F.3d 1239, 1244 (10th Cir. 2005) ("In order to prevail on a § 1983 right of access claim and substantiate more than nominal damages, a plaintiff may have to engage the merits of the underlying case."); *Gentry*, 65 F.3d at 560 ("the chances of success [on the underlying claim] are very relevant to the question of damages [in the access to the courts claim]").

[18] Here, however, Phillips requested not the economic value of the remedy he sought in the underlying suit, but his costs in prosecuting that suit over the course of many years, and the district court appears to have based its damages award, at least in part, on that request. Hust argues that, because Phillips could not have recovered his costs had he prevailed in the Supreme Court, he cannot as a matter of law recover them here. This contention misapprehends the nature of the injury Phillips asserts. Phillips is not claiming that Hust's actions deprived him of the opportunity to recover his costs; rather, his claim is that he was robbed of his day in court, of the opportunity to be heard, whether he prevailed or not. Neither party has pointed to any authority addressing the availability of the remedy Phillips seeks, and we have discov-

---

[5]Of course, as in other circumstances in which the speculativeness of the damages is the result of the defendant's wrongful conduct, "the court may . . . give due weight to the fact that the question was made hypothetical by the very wrong of the defendant." Rest. 2d Torts § 774A, cmt. c.

ered none. Nevertheless, we must acknowledge that the opportunity to press even unsuccessful suits has a value in itself, and is constitutionally protected. *See, e.g., BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 532 (2002) ("even unsuccessful but reasonably based suits advance some First Amendment interests" and may not be unnecessarily burdened). Awarding the costs of the underlying suit recognizes that Phillips incurred those costs in the expectation that he would be able to exercise those rights and press his legal contentions to the full extent permitted by the law, and even if he was ultimately unsuccessful. Hust's actions cut his efforts short, precluding him from realizing that expectation and destroying the value of his cumulative litigation expenses. Accordingly, we hold that the costs of the litigation that was prematurely cut short by a defendant's wrongful conduct is a proper measure of damages in a § 1983 suit for violation of the right of access to the courts.

Nevertheless, the district court made factual findings supporting its award of damages that are insufficient to permit adequate review of the award. "The district court's findings must be explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." *Fed. Trade Comm'n v. Enforma Natural Prod., Inc.*, 362 F.3d 1204, 1216 (9th Cir. 2004) (citing *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1444 (9th Cir. 1985)) (internal quotation marks omitted). Where the district court's findings are insufficient to indicate the factual basis for its ultimate conclusion concerning damages, then its finding as to the amount of damages is clearly erroneous. *Amantea-Cabrera*, 279 F.3d at 750.

**[19]** Here, the district court made no findings at all as to the basis for its valuation of Phillips's post-conviction relief claim, basing its award solely on *Lewis*'s observation that "an arguable (though not yet established) claim [is] something of value." *Lewis*, 518 U.S. at 353. It made no findings concern-

ing the amount of Phillips's costs in the collateral litigation and it made no findings concerning his claims for mental or emotional injury.[6] Moreover, its remarks as to his claim to recover the costs of the collateral litigation as damages on his § 1983 claim are inconsistent,[7] leaving the record unclear as to whether the damages award included those costs. Because the district court's factual findings were insufficiently clear for us to determine the basis of the amount of its damages award, we vacate the judgment and remand the case for the district court to supplement its findings. *See Alpha Distributing Co. of California, Inc. v. Jack Daniels Distillery*, 454 F.2d 442, 453 (9th Cir. 1972).

## V.

We AFFIRM the district court's grant of summary judgment to Phillips and denial of summary judgment to Hust on the issue of liability under 42 U.S.C. § 1983 for Hust's violation of Phillips's right of access to the courts. We VACATE the judgment and REMAND for the limited purpose of allowing district court to supplement its findings regarding its award of damages. Phillips's motions for sanctions are DENIED.

---

[6]Hust argued in the district court that under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), damages for emotional distress are unavailable here. She has not renewed this argument on appeal, and it is in any case belied by our decision in *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998), in which we held that the Prison Litigation Reform Act "does not apply to First Amendment Claims regardless of the form of relief sought."

[7]In its post-trial findings, the court had noted that Phillips could seek those costs in a post-judgment bill of costs, suggesting they were not included in its damages award, yet in its ruling on Phillips's bill of costs, the court stated that the state-court costs had been included in the award of damages. These two statements appear irreconcilable, and in any event, the statement in the costs order does not constitute a finding of fact.

O'SCANNLAIN, Circuit Judge, dissenting:

I respectfully dissent from the court's holding that prison librarian Hust's refusal to allow inmate Phillips access to the prison comb-binding machine hindered his ability to file his petition for certiorari timely in the Supreme Court. I must also dissent from the court's holding that Hust is not entitled to qualified immunity.

I

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. In *Lewis v. Casey*, 518 U.S. 343 (1996), the Court subsequently recognized the limits of *Bounds* when it held that an inmate must demonstrate that official acts or omissions "hindered his efforts to pursue a [non-frivolous] legal claim." *Id.* at 351; *see also id.* at 365 (Thomas, J., concurring) ("[T]he majority opinion . . . places sensible and much-needed limitations on the seemingly limitless right to assistance created in *Bounds* . . . ."). While *Lewis* recognized that the tools of litigation must be made available when *necessary* to ensure "meaningful access" to the courts, the majority opinion goes beyond that to require prison officials to provide inmates with whatever tools seem *reasonable* in a given situation, even if not necessary to vindicate the inmate's right of action. In so doing, today's decision ignores the sensible limitations recognized by the Supreme Court in *Lewis*.

A

At the outset, I note several points of agreement with the majority. First, the court correctly recognizes that in order to prevail on a motion for summary judgment and to merit a

remedy for a lost opportunity to present a legal claim, Phillips must affirmatively establish three elements: (1) actual injury in the form of a loss of a non-frivolous underlying legal claim; (2) that official acts hindered his pursuit of the legal claim; and (3) that he is pursuing a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Maj. Op. at 1777-78 (citing *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002)).

I also agree with the majority that it is "arguable," *Lewis*, 518 U.S. at 351, that at least one of Phillips's claim was non-frivolous. Maj. Op. at 1778. Specifically, I accept as non-frivolous Phillips's claim that the state court applied a standard that differed from that set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Finally, I agree with the court that Phillips is able to point to a "specific instance" in which he was denied access to the courts: his petition for a writ of certiorari was denied as untimely by the Supreme Court. *See Lewis*, 518 U.S. at 356 (describing the loss of an actionable claim).

### B

Despite these points of agreement, I cannot agree with the majority's resolution of this case. Simply stated, Phillips has failed to establish, at the summary judgment stage, that the official actions of the prison librarian were the proximate cause of his loss. *See Arnold v. IBM Corp.*, 637 F.2d 1350 (9th Cir. 1981) ("The causation requirement of Section 1983 is not satisfied by showing of mere causation in fact. Rather the plaintiff must establish proximate causation.") (internal citations omitted); *Stevenson v. Koskey*, 877 F.2d 1435, 1438-39 (9th Cir 1989).

### 1

In *Lewis*, the Supreme Court made clear that *Bounds* "guarantee[d] no particular methodology but rather the conferral of

a *capability*—the capability of bringing challenges to sentences or conditions of confinement before the courts." 518 U.S. at 356 (emphasis added). Capability is defined as the "quality or state of ability; having the physical, mental or legal power to perform." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 203 (1986). The conferral of a capability to bring a non-frivolous legal action does not, however, require states to turn prisoners into litigation machines. As the Supreme Court stated in *Lewis*,

> [*Bounds*] does not guarantee inmates the wherewithal to transform themselves into litigating engines . . . The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

518 U.S. at 355 (emphasis in original).

Thus, in *Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 856 (9th Cir. 1985), we rejected the contention of inmates that a prison library must contain the Pacific Reporter 2d, Shepard's Citations and a number of other reference books. We noted that *Bounds* did not require a prison to provide its inmates with "a library that results *in the best possible access to the courts*." *Id.* (emphasis added). Instead, what *Bounds* required was that the resources meet minimum constitutional standards sufficient to provide meaningful, though perhaps not "ideal," access to the courts. *Id.* We thus had no trouble also concluding that inmates had no right to a typewriter to prepare their legal documents where the court rules permit pro se litigants to hand-write their pleadings.

The situation in *Lindquist* may be contrasted with that with which we were presented in *Allen v. Sakai*, 40 F.3d 1001 (9th

Cir. 1994). In that case, Allen's notice of appeal to the Hawaii Circuit Court was rejected because it was written in pencil and not ink. Allen claimed that the outright denial of a pen deprived him of access to the courts. We held:

> Hawaii's Circuit Court Rule 3(a) requires that all "handwritten entries on papers shall be in black ink," and defendants concede that this mandate was "clear and explicit" and provided no exceptions. In light of the clarity of the pre-existing law, it should have been apparent to the defendants that a ban on the use of pens would seriously hamper an inmate's access to the courts and therefore constitute a violation of his rights under *Bounds*.

40 F.3d 1006. *Allen* presented a stark example of how the complete denial of a "clear[ly]" necessary writing utensil—specifically mentioned as a required tool by the *Bounds* court—could effectively deprive an inmate of their right of access to the courts. The result in *Allen* is thus unremarkable. *See also Sands v. Lewis*, 886 F.2d 1166, 1169 (9th Cir. 1989) ("[We] have considered claims based on *Bounds*'s teaching that the State must provide 'indigent' prisoners with *basic supplies* which ensure that their access is 'meaningful.' In evaluating this latter type of claim, we have *declined to read* into the Constitution any specific minimum requirements beyond those mentioned in Bounds itself.") (emphasis added); OR. ADMIN. R. 291-139-0005 (requiring prison officials to make available "*necessary* supplies for the preparation and filing of legal documents") (emphasis added).

Our precedents, therefore, require that for Phillips to prevail on summary judgment, he must make a showing that use of the comb-binding machine was a necessary pre-requisite to allowing him "meaningful access" to the courts.

2

The majority opinion appears to acknowledge that what is required is the provision of tools sufficient to afford a "capa-

bility" of litigation, but then, with a magician's sleight of hand, the focus of the inquiry is shifted to the apparent "arbitrary" nature of Hust's denial. The majority gets it mostly correct, however, in its initial statement that "[n]evertheless, it remains true that some means of preparing legal documents, including a means of binding them *where required*, must be made available." Maj. Op. at 1780 (emphasis added). Unfortunately, rather than adhering to the clear limits established by Supreme Court precedent, the majority here mandates prison employees to anticipate when the denial of unnecessary services will so fluster an inmate that his filing, though in no way actually frustrated, might be delayed. Such a rule amounts to an unreasonable demand that prison librarians be not only experts on their actual duties, but also clairvoyant.

Supreme Court Rule 33.2 governs the form of documents to be filed with the Court. It provides that every document "shall be stapled or bound at the upper left-hand corner." In turn, Supreme Court Rule 39.3 governs proceedings in forma pauperis and requires every document presented by a party to be "prepared as required by Rule 33.2 (unless such preparation is impossible)." (emphasis added) It further requires that the petition be legible, obviously expecting most filings to be handwritten. Finally, the rule directs the Clerk to "mak[e] due allowance for any case presented under this Rule by a person appearing pro se."

Three simple points may be made. First, while an initial reading suggests that stapling or binding is affirmatively required, Rule 39.3 provides an exception when such methods are not possible. Second, Rule 33 requires the staple or binding to be at the upper left-hand corner. A comb-binding machine, in contrast, binds an entire side of a petition, and thus does not even come within the rule. Finally, the rule specifically mandates leniency for *pro se* litigants, many of whom the Court is fully aware are indigent prisoners.

The district court's grant of summary judgment, however, did not take into account the flexible—or at least disputed—nature of these rules. The district court ruled:

> [Hust's] actions caused him to face the difficult choice of violating a Supreme Court Rule by submitting a partially bound brief, or missing his deadline. Plaintiff chose to comply with the Supreme Court Rule, and missed the filing deadline; his petition was subsequently denied as untimely by the Supreme Court. Viewing the facts in a light most favorable to plaintiff, it appears from the factual allegations and from the record on summary judgment that defendant violated plaintiff's constitutional right to access the courts.

The district judge's conclusion is incorrect.[1] The applicable Supreme Court rule neither requires *nor allows* comb-binding. The only way a comb-bound petition would be compliant with the clear text of this rule is by virtue of the impossibility clause in Rule 39.3. Reference to that rule, however, would defeat Phillips's claim that the rule is clear and provides for no exceptions. *See Allen*, 40 F.3d at 1006. Thus, there is no nexus between the denial of access to the comb-binding machine and the late filing of Phillips's petition. It was only Phillips's dogged insistence on this particular means of binding that caused his petition to be filed late and therefore rejected.[2]

---

[1] We review the grant of summary judgment de novo, *Messick v. Horizon Industries, Inc.*, 62 F.3d 1227, 1229 (9th Cir. 1995).

[2] The majority contends, "Hust's refusal to allow Phillips to use the comb-binder placed him in the untenable position of having to decide whether to file the petition on the date it was due in the hopes that it would be accepted unbound or partially bound, or to wait until he could bind the petition in the hopes that it would be accepted late." Maj. Op. at 1782. While this is literally true because the rules do not guarantee under what circumstances the clerk will deem proper presentation to have been "impossible," this is simply the nature of a general standard and cannot be grounds for finding the denial of access to the courts. To do so would be

The district court's erroneous conclusion that Phillips was attempting to bind his petition in accordance with Supreme Court Rules finds no support in the record or in the text of the provisions. Accordingly, Hust's actions cannot be the proximate cause of Phillips's alleged loss.

Second, the record also reflects that the district court's analysis of the merits of the issue was permeated with incorrect presumptions for the summary judgment stage of this case. While the above-quoted analysis was performed as the first step of the *Saucier* qualified-immunity analysis, *see Saucier v. Katz*, 533 U.S. 194 (2001), the district court expressly referred back to it with a *supra* citation in concluding that summary judgment for Phillips was warranted. On the merits of plaintiff's summary judgment motion, however, it is well-established that the evidence must be viewed in a light most favorable to the non-moving party, in this case Hust. *See T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987) ("[A]t the summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party . . . [I]f a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied. Inferences must also be drawn in the light most favorable to the nonmoving party."). The court's analysis of the merits of the issue, however, which expressly incorporated its earlier analysis and not much more, viewed the facts in a light most favorable to plaintiff.

A *de novo* review of the record shows that Phillips failed to establish there were no disputed material issues of fact. There was not "but one reasonable conclusion as to the ver-

to directly countermand the two explicit provisions in the Supreme Court rules that suggest leniency for *pro se* litigants. The argument also ignores that Phillips would have assumed an even *greater* risk in filing a comb-bound cert. petition when the rules explicitly require binding at the upper left-hand corner of the document.

dict" in this case, *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986), and thus summary judgment was not appropriate.

### 3

The majority's focus on the allegedly arbitrary manner in which the prison enforced its policy against allowing inmates to use the comb-punch is thus beside the point. Under *Christopher v. Harbury*, 536 U.S. at 413-14, Phillips must show that even an unreasonable prison policy was the cause of his loss. Our decision in *Gluth v. Kangas*, 951 F.2d 1504, 1508 (9th Cir. 1991), cited by the majority, does not counsel differently. There, we simply recited the unremarkable conclusion that the existence of a law library does not provide for meaningful access when inmates are not afforded, in part because of arbitrary denials, a reasonable amount of time to use the facility. *Id.* Moreover, *Gluth* was a case decided before *Lewis*, when our circuit law did not require inmates alleging "core" *Bounds* violations to establish actual injury. *Id.* at 1509 n. 2; *see also Sands*, 886 F.2d at 1171.

### C

Today's holding may seem eminently reasonable to some. As the court notes, "[W]e simply reach the unexceptional conclusion that otherwise valid prison policies may not be selectively or arbitrarily enforced *in such a way as to interfere* with prisoners' access to the courts to pursue litigation arising from their incarceration." Maj. Op. at 1782 n.2 (emphasis added). In applying such an approach, however, the majority focuses only on the apparent arbitrary nature of Hust's denial to the detriment of the causation analysis. Because I am persuaded that the majority errs in applying its own rule, and because I believe the record does not establish, at the summary judgement stage, that Hust's actions were the proximate cause of Phillips's injury, I would reverse the grant of summary judgment and remand for trial.

## II

Nor am I persuaded by the majority's view of Hust's qualified immunity claim.

## A

A state officer is not protected by qualified immunity where he or she has violated a clearly established constitutional right. Under *Saucier v. Katz*, 533 U.S. 194 (2001), "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer his conduct was unlawful in the situation he confronted." *Id.* at 201; *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). Although the author's subjective intent is irrelevant, *id.* at 641, the information actually possessed by the officer is relevant to this determination. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

The *Lewis* court made clear that the right at issue in a case such as this is not "an abstract, freestanding right to a law library or legal assistance." 518 U.S. at 2180. Instead, the right vindicated by *Bounds* was a right of "meaningful access to the courts." *Id.* Thus, the question before us is whether a reasonable prison official would believe that denying access to the prison comb-binding machine would violate an inmate's right of access to file a brief for a writ of certiorari in the Supreme Court of the United States.

## B

There are three key facts that establish Hust's entitlement to qualified immunity. First, despite her unfamiliarity with the explicit holding of *Lewis v. Casey*, she was clearly aware of her affirmative duty to aid inmates in the filing of legal docu-

ments.[3] She stated that her job was not to provide legal assistance to inmates, but instead to supervise inmates in accord with ODOC Administrative Rules. Those rules provide:

> Policy: Within the inherent limitations of resources and the need for facility security, safety, health and order, it is the policy of the Department of Corrections to satisfy its legal obligation to provide inmates meaningful access to the courts by affording inmates reasonable access to a law library or contract legal services, and to necessary supplies for the preparation and filing of legal documents . . . ."

OR. ADMIN. R. 291-139-0005. That Hust was aware of this policy requiring her to aid in the preparation of legal materials is not disputed in the record.

---

[3]The district court's reading of Hust's response to Phillips's interrogatory about *Lewis v. Casey* is clearly erroneous. The court found Hust to be "willfully blind" to the applicable law when she "denied" the statement that she was "somewhat familiar with *Lewis v. Casey*, 518 U.S. 343 (1996)." That statement, when read in context, merely denies a precise knowledge of the *Lewis* case. It in no way suggests that Hust was "willfully blind" to the requirement that the basic supplies of litigation be afforded to inmates. Indeed, in the very same affidavit, Hust asserts that part of her position is to supervise inmates "in accordance with the ODOC Administrative Rules governing "*Legal Affairs (Inmate),*" which requires prison officials to make available "necessary supplies." The district court's reading is akin to requiring a state official, even one not required to be trained in the law, to be intimately familiar with the names and holdings of decided cases. We have never required as much. *See Cox v. Roskelley*, 359 F.3d 1105, 1115 n. 1 (citing *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 278 (2d Cir.1999)) ("The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct. The unlawfulness must be apparent."). The context of Hust's statements makes clear that she was generally knowledgeable about what was required of her as a law librarian. Nothing more is required.

Second, the delay in time responding to Phillips's request was not unreasonable based upon the information known to Hust at the time. *See Anderson*, 483 U.S. at 641 (noting that the determination of whether official action is objectively legally reasonable "will often require examination of the information possessed by" the state actor). Here, the undisputed record shows that the June 13 request which Phillips sent to Hust did not indicate the date which his petition was due.

Finally, the record establishes that Hust was knowledgeable about filing requirements in courts. Hust stated in her affidavit that in her experience as a prison law librarian the courts accept *pro se* briefs without comb-binding. Her view that comb-binding was not required was reasonable, as the majority opinion itself recognizes before ultimately dismissing her interpretation of the rules as "not the only reasonable interpretation." Maj. Op. at 1782. Furthermore, it is not disputed that Hust "even contacted Trent Axen, Law Librarian at the Oregon State Penitentiary (OSP) in Salem, Oregon, who has experience with this matter to confirm what [she] already knew. Mr. Axen confirmed that he does not bind inmate briefs and the court has accepted unbound inmate briefs." This type of reference to an outside, knowledgeable source is ample proof of the reasonableness of Hust's actions.

The "unlawfulness" of Hust's actions is simply not apparent. *Anderson*, 483 U.S. at 640. It was not an unreasonable reading of the rules of the Supreme Court to conclude that they do not require, nor even allow, the comb-binding of petitions. Furthermore, in light of the general tenor of *Lewis v. Casey* and our previous cases which have held that only basic legal supplies, and not unnecessary amenities, are to be provided to inmates, *see Sands v. Lewis*, 886 F.2d at 1170, Hust's denial of access was not "willfully blind" to the requirements of law. Accordingly, it was "objectively legally reasonable," even if ultimately mistaken, *Anderson*, 483 U.S. at 641; *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir. 1993),

for Hust to conclude that her denial of access to the comb-binding machine would not hinder Phillips's "capability" to file his petition. She is therefore entitled to qualified immunity. I respectfully dissent from the court's holding otherwise.