**James Darnell GOLDEN, Plaintiff,**

v.

**Gary R. McCAUGHTRY and Cindy O'Donnell, Defendants.**

No. 95–C–1248.

United States District Court,
E.D. Wisconsin.

Aug. 2, 1996.

James Darnell Golden, Waupun, WI, Pro Se.

Wisconsin Dept. of Justice by David E. Hoel, Madison, WI, for Defendant.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

In a December 27, 1995, decision and order, I granted pro se plaintiff James Golden's request for leave to proceed in forma pauperis in the above-captioned action under 42 U.S.C. § 1983. *See Golden v. McCaughtry,* 915 F.Supp. 77 (E.D.Wis.1995). Mr. Golden is currently incarcerated at the Waupun correctional institution ["WCI"]. Presently before the court is Mr. Golden's motion for a temporary restraining order "and/or" a preliminary injunction and the defendants' motion for summary judgment.

In his complaint, the plaintiff alleges that the defendants have implemented a policy at WCI whereby cassette tapes marked with a "parental advisory-explicit lyrics" label are

previewed by prison officials prior to permitting inmates to receive such tapes through the mail. Mr. Golden claims that tapes which "advocate violence" are banned. The plaintiff asserts that cassette tapes received by WCI which are not approved are held for thirty days, during which time the inmate can elect to return the tape to the sender, or arrange for the tape to be sent to, or picked up by, another person. Mr. Golden maintains that in 1995, he ordered a rap music cassette tape which he was not permitted to possess by WCI officials. He contends that the defendants' policy violates his rights under the First and Fourteenth Amendments.

## I. FACTS

The following facts are taken from the parties' proposed findings of fact. Pursuant to Local Rule 6.05(d), there is no genuine issue as to any material fact to which a specific response has not been set forth.

Plaintiff James Golden at all times relevant to this action was an inmate incarcerated at the Waupun correctional institution ["WCI"]. (Complaint ¶ III.A–B). Defendant Gary McCaughtry at all times relevant to this action was the warden of WCI. (Complaint ¶ III.C).

Defendant Cindy O'Donnell was an associate warden responsible for security at the WCI from April 17, 1994, to March 23, 1996. (O'Donnell aff. ¶ 1). As the security director at WCI, Ms. O'Donnell's duties included the administration and supervision of the security program for WCI. (O'Donnell aff. ¶ 1). Ms. O'Donnell planned security program changes, directed the assignment of subordinate staff and recommended security policy to the WCI warden. (O'Donnell aff. ¶ 3).

Lynn L. Oestreich was employed as the associate warden for security at the WCI from March 10, 1990, to January 30, 1994. (Oestreich aff. ¶ 1). As part of Mr. Oestreich's duties and responsibilities he implemented and monitored the overall institution goals, policies and procedures. (Oestreich aff. ¶ 2). On April 1, 1992, Mr. Oestreich issued a memorandum to WCI property Sgt. Kenneth Perre concerning cassette tapes received at WCI for inmate possession and use. (Oestreich aff. ¶ 4, Ex. A). The parental advisory warning is placed on the cassette tapes as part of the labeling done by the music company. (Oestreich aff. ¶ 16). Mr. Oestreich directed that all tapes bearing such "parental advisory" warning be forwarded to him for preview before the tapes would be allowed into WCI for inmate possession and use. (Oestreich aff. ¶ 4, Ex. A).

Mr. Oestreich issued this direction to Sgt. Perre after he became aware of an incident which took place at WCI in March of 1992. (Oestreich aff. ¶ 5). The incident took place in an area of the WCI known as "the big top," and involved a group of inmates who were chanting a racial remark which was a portion of a song from a cassette tape. (Oestreich aff. ¶ 5). The incident was documented in a conduct report, which came to the attention of Mr. Oestreich when he served as a member of the adjustment committee at WCI. (Oestreich aff. ¶ 5).

WCI is a maximum security prison housing a multi-racial group of inmates, a majority of whom are incarcerated for assaultive offenses. (Oestreich aff. ¶ 8). Numerous WCI inmates are associated with gangs. (Oestreich aff. ¶ 8). Such gangs are organized primarily along racial lines. (Oestreich aff. ¶ 8).

As of December 31, 1992, approximately 927 of the approximately 1,150 inmates at WCI were incarcerated for assaultive offenses. (Oestreich aff. ¶ 8). Between January 1, 1992, and November 19, 1992, WCI inmates were issued 163 conduct reports for battery, 224 conduct reports for threats, 22 conduct reports for inciting a riot, 44 conduct reports for possessing a weapon and 43 conduct reports for group resistance and petitions. (Oestreich aff. ¶ 10).

After tapes with the parental advisory warning are reviewed, the titles of the tapes are added to a list which is available to inmates at WCI. (Oestreich aff. ¶ 12). The list specifies the titles of tapes with parental advisory warnings which are allowed into WCI as well as those which are not allowed into the institution. (Oestreich aff. ¶ 12). The January 10, 1996, list concerning those tapes with a parental advisory warning lists 247 tapes which are permitted and 211 tapes which have been banned. (O'Donnell aff., Ex. E).

Inmates at WCI, including the plaintiff, receive a copy of the WCI handbook. (Oestreich aff. ¶ 14). The handbook contains a warning that cassette tapes with a parental advisory label will be reviewed prior to receipt of such tapes by an inmate. (Oestreich aff. ¶ 14, Ex. C at 2). If an inmate orders a tape which is determined to contain lyrics which encourage or advocate violence or advocate disrespect for an ethnic or racial group, the inmate may not play the tape or retain it. (Oestreich aff. ¶ 19, Ex. B at 2–3).

Not all tapes bearing the parental advisory label are banned from WCI. (Oestreich aff. ¶ 20). Tapes with sexually explicit lyrics are allowed as well as those dealing with racial or black cultural topics. (Oestreich aff. ¶ 21). Neither specific artists nor specific musical styles are targeted. (Oestreich aff. ¶ 21).

Patricia Garro is a captain at WCI. (Garro aff. ¶ 1). During the time that Ms. O'Donnell was the associate warden for security at WCI, Ms. Garro was assigned the duty of reviewing cassette tapes sent to WCI which contained a parental advisory label. (Garro aff. ¶ 4). As part of her duties, Ms. Garro reviewed the cassette tape entitled "The Dead Has Arisen" by "Lil ½ Dead," which had been sent to the plaintiff. (Garro aff. ¶ 5). After reviewing the tape, Ms. Garro determined that it contained lyrics which advocated and encouraged violence. (Garro aff. ¶ 5). Therefore, the tape was not allowed into WCI. (Garro aff. ¶ 5).

Inmates at WCI are permitted to view movies such as "An Eye For An Eye," "Assassin," "Death Before Dishonor," "Revenge," "The Pope Must Die" and "Sleeping With The Enemy." (Plaintiff's brief in Opposition to the Defendants' Motion for Summary Judgment, Ex. J–O).

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(c), Federal Rules of Civil Procedure, a motion for summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The substantive law identifies which facts are material. *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only disputes over facts which are outcome determinative under the applicable substantive law will preclude the entry of summary judgment. *Id.*

A genuine issue of material fact is one which creates a genuine issue for trial. *Matsushita Elec. Industrial Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A genuine issue of material fact is "more than some metaphysical doubt as to the material facts." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find in favor of the non-moving party, there is no 'genuine issue for trial.'" *Id.*

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Roger v. Yellow Freight Systems, Inc.,* 21 F.3d 146, 148 (7th Cir.1994). If the movant makes such a demonstration, the non-movant must go beyond the pleadings and set forth specific facts which show that there is a genuine issue for trial. Rule 56(e), Federal Rules of Civil Procedure; *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In resolving the motion, the court must view the record, and any reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Griffin v. City of Milwaukee,* 74 F.3d 824, 826–27 (7th Cir.1996). In addition, Mr. Golden's pro se submissions must be liberally construed. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972).

## III. ANALYSIS

As stated above, Mr. Golden claims that the defendants' restriction on the receipt of cassette tapes violates his rights under the First and Fourteenth Amendments. In their motion for summary judgment, the defendants maintain that such restrictions are justified based on prison security concerns and do not violate the plaintiff's constitutional rights.

### A. FIRST AMENDMENT

Rap music constitutes speech protected by the First Amendment. *Betts v.*

McCaughtry, 827 F.Supp. 1400, 1406 (W.D.Wis.1993), aff'd, 19 F.3d 21 (7th Cir. 1994) (citing Luke Records, Inc. v. Navarro, 960 F.2d 134, 137 (11th Cir.), cert. denied, 506 U.S. 1022, 113 S.Ct. 659, 121 L.Ed.2d 585 (1992)). However, incarceration necessarily brings with it the curtailment of many rights. Hudson v. Palmer, 468 U.S. 517, 524, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 393 (1984); Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). "People who want to enjoy the full panoply of constitutional rights to express themselves had best refrain from committing crimes punishable by imprisonment." Ustrak v. Fairman, 781 F.2d 573, 580 (7th Cir.), cert. denied, 479 U.S. 824, 107 S.Ct. 95, 93 L.Ed.2d 47 (1986). An infringement on an inmate's First Amendment rights is permissible if it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)).

In Turner, the Supreme Court set forth four factors which may be considered in addressing the reasonableness of a prison regulation which infringes on an inmate's constitutional rights. 482 U.S. at 89–90, 107 S.Ct. at 2261–62. Those factors are: (1) whether there is a valid, rational connection between the regulation at issue and a legitimate governmental interest; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates; and (4) the absence of ready alternatives. Turner, 482 U.S. at 89–90, 107 S.Ct. at 2261–62. Considerable deference is due prison officials in adopting policies which are needed to preserve internal order and security. Caldwell v. Miller, 790 F.2d 589, 596 (7th Cir.1986).

As stated above, the first factor for consideration is whether there is a rational connection between the regulation at issue and a legitimate governmental interest. The interest identified by the defendants as the basis for their ban on certain cassette tapes is their concern for prison security.

In his affidavit, Mr. Oestreich states that many of the inmates are incarcerated at WCI for assaultive offenses. He avers that his implementation of the cassette tape review policy was based on an incident in which a group of inmates were chanting a racial remark which was a portion of a song from a cassette tape. Mr. Oestreich asserts that such racially motivated incidents endanger security at a maximum security institution such as WCI.

In my opinion, the defendants have shown that the cassette tape review policy is rationally connected to their interest in maintaining order and security at WCI. Based upon the circumstances identified by Mr. Oestreich, it is not unreasonable to review cassette tapes and exclude those which advocate or incite violence. With respect to the cassette tape which Mr. Golden was not allowed to receive, Ms. Garro states that she reviewed that tape and found that it contains lyrics which advocate and encourage violence.

It is rational for prison officials to exclude materials which, although not necessarily "likely" to lead to violence, are determined to create an intolerable risk of disorder in a particular institution. Thornburgh v. Abbott, 490 U.S. 401, 417, 109 S.Ct. 1874, 1883–84, 104 L.Ed.2d 459 (1989). "Judges should be cautious about disparaging disciplinary and security concerns expressed by the correctional authorities." Keeney v. Heath, 57 F.3d 579, 581 (7th Cir.1995).

Mr. Golden does possess alternative means of exercising his First Amendment rights. He is permitted to purchase and to possess any cassette tape which does not have a parental advisory warning label. Moreover, inmates are allowed to possess the majority of tapes reviewed by officials at WCI even though they may have a parental advisory label.

Accommodation of the plaintiff's asserted right would have an adverse impact on both prison personnel and other inmates. Permitting the plaintiff to receive any cassette tape which he chooses would, according to Mr. Oestreich, endanger security at WCI. The plaintiff has not submitted any evidence to refute the defendants' assertion that permitting inmates to receive tapes which advocate

violence would have a negative effect on prison security.

Mr. Golden has not presented any alternative to the defendants' restriction on the possession of tapes. Mr. Oestreich avers that WCI does not have editing facilities to remove offending lyrics from cassettes. Moreover, such a procedure would be overly burdensome and time consuming.

The plaintiff contends that inmates are allowed to view movies which allegedly have some violent content. However, Mr. Golden has not provided any evidence to show that the content of such movies is similar to the content of the banned cassette tapes. He has only provided the court with titles of movies shown at WCI. The court cannot infer from the titles whether such movies encourage or advocate violence.

Mr. Golden asserts that various cassette tapes are allowed in WCI which contain lyrics similar to those contained in the tape which he was not permitted to possess. The plaintiff has not shown that such tapes advocate violence to the same degree as the tape which he ordered. Moreover, the mere fact that the defendants' method for excluding cassette tapes may be underinclusive does not render such method unconstitutional. See Curtis v. Thompson, 840 F.2d 1291, 1303 (7th Cir.1988).

Security is "central to all other corrections goals." Thornburgh, 490 U.S. at 415, 109 S.Ct. at 1882. It is reasonable for the defendants to exclude from possession those materials which might lead to an increase in violence amongst a group of individuals who have demonstrated a propensity to engage in assaultive behavior through their commission of violent offenses. I conclude that the restriction on the receipt by inmates of cassette tapes does not violate the plaintiff's First Amendment rights.

**B. DUE PROCESS**

■ The plaintiff also asserts that he was deprived of his property without due process of law based on the fact that he was not allowed to receive cassette tapes that he ordered. The Fourteenth Amendment prohibits a state from depriving an individual "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Property interests protected under the Due Process Clause are not created by the Constitution. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Such interests are created from an independent source such as state law which provides a "legitimate claim of entitlement." Id.

■ However, as with their rights under the First Amendment, "the due process rights of prisoners are not absolute, but must be accommodated to the legitimate security needs of a corrections institution." Caldwell, 790 F.2d at 609; see also Bell v. Wolfish, 441 U.S. 520, 554, 99 S.Ct. 1861, 1882, 60 L.Ed.2d 447 (1979). To the extent that prison officials further their interest in prison security in a reasonable manner, an inmate's property claims must give way. Caldwell, 790 F.2d at 609.

■ Under the policy implemented at WCI, an inmate who receives a cassette tape with a parental advisory label can elect to have the tape returned to the retailer without review by prison officials. If an inmate wishes to keep the tape, he can have it reviewed by prison personnel. If a tape is disallowed, the inmate is so notified. The inmate is then provided thirty days to choose to (1) return the tape to the sender, (2) send the tape out with a visitor, (3) send the tape to a person on the inmate's visitor list, or (4) have the tape destroyed.

If an inmate disagrees with the assessment of the tape, he can file a complaint with the inmate complaint review system. (Oestreich aff. ¶ 23). The inmate complaint review system allows inmates to file complaints regarding rules, living conditions and actions by prison staff which affect institution living. (Miller aff. ¶ 3). Mr. Golden does not claim that he was unaware of the procedure outlined above.

■ The plaintiff has not identified any source from which this court can conclude that he has a property interest in cassette tapes of his choice. He does not identify any state statute or regulation which provides such an interest. Moreover, as stated above, the defendants have demonstrated that the restriction on the receipt of cassette tapes by inmates is reasonably related to the defendants' legitimate interest in prison security.

The plaintiff also argues that the defendants' violated his right to substantive due process. The substantive right found in the Due Process Clause "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Colon v. Schneider,* 899 F.2d 660, 666 (7th Cir.1990) (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986)). However, he has not identified any substantive due process right which was implicated in the decision to prevent him from possessing the tape which he ordered. Therefore, the defendants are entitled to summary judgment on Mr. Golden's due process claim.

Because I conclude that the defendant's restriction on the possession of cassette tapes by inmates does not violate Mr. Golden's constitutional rights, I need not address the defendants' argument that they are entitled to qualified immunity on the plaintiff's claims.

Mr. Golden argues that the defendants' tape review policy is inconsistent with state regulations set forth in the Wisconsin administrative code; he points out that such regulations do not place restrictions on the possession of cassette tapes by inmates. However, it does not follow that the defendants are prohibited from imposing additional restrictions on the possession of personal property by inmates. Moreover, a violation of state law is not itself a violation of the Constitution. *Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989). State courts are the appropriate institutions for the enforcement of state law. *Id.*

### IV. *MOTION FOR A PRELIMINARY INJUNCTION*

Due to my resolution of the defendants' motion for summary judgment in their favor, the plaintiff's motion for a temporary restraining order or for a preliminary injunction will be dismissed as moot.

### ORDER

Therefore, IT IS ORDERED that the defendants' motion for summary judgment be and hereby is granted.

IT IS ALSO ORDERED that the plaintiff's motion for a temporary restraining order or for a preliminary injunction be and hereby is dismissed as moot.

IT IS FURTHER ORDERED that the clerk of court be and hereby is directed to enter judgment, pursuant to Rule 58, Federal Rules of Civil Procedure, dismissing this action, with prejudice and without costs.