**NEVADA DEPARTMENT OF CORRECTIONS, Plaintiff,**

v.

**Russell COHEN, Jimmy Earl Downs, Travers A. Greene, and Paul Browning, Defendants.**

**No. 03:07–CV–00266–LRH–RAM.**

United States District Court, D. Nevada.

Aug. 27, 2008.

---

Alicia L. Lerud, Office of the Attorney General, Carson City, NV, for Plaintiff.

Russell Cohen, Ely, NV, pro se.

Jimmy Earl Downs, Carson City, NV, pro se.

Travers A. Greene, Ely, NV, pro se.

Paul Browning, Ely, NV, pro se.

## ORDER

LARRY R. HICKS, District Judge.

Presently before the court is a Motion for Summary Judgment (# 19[1]) filed by Nevada Department of Corrections. Intervenor Jimmy Earl Downs ("Downs") has filed an opposition (# 70), and NDOC replied (# 71). Also before the court is Downs's Motion for Reconsideration (# 30). NDOC has filed a response (# 32), and Downs replied (# 58). Downs has also filed a Request for Ruling (# 68) and Motion to Strike Response (# 72). NDOC

---

1. Refers to the court's docket number.

has filed a Response (# 77) to Downs's Motion to Strike.

Next, a Motion for Summary Judgment (# 88) was filed by Travers A. Greene ("Greene") and Paul Browning ("Browning"). NDOC has filed an opposition (# 97), and Greene and Browning replied (# 100). Finally, Greene and Browning have filed a motion to strike (# 99).

## I. Factual Background

This is an action seeking a declaratory judgment that NDOC's ban on the personal possession of typewriters by inmates is constitutional. Defendant Russell Cohen, intervenor Greene and intervenor Browning are inmates who currently are housed at Ely State Prison ("ESP"). Intervenor Downs is an inmate housed at Nevada State Prison.

On December 28, 2006, an inmate was murdered at ESP by another inmate. (Mot. for Summ. J. (# 19), Decl. of Debra Brooks, Ex. C ¶ 6.) NDOC suspected that the weapon used in the murder was a roller pin from inside the platen of the inmate's typewriter. (Mot. for Summ. J. (# 19), Aff. of James G. Cox, Ex. B ¶ 4.)

On March 16, 2007, an inmate at ESP attempted to stab a correctional officer with an inmate-made weapon. (Mot. for Summ. J. (# 19), Decl. of Debra Brooks, Ex. C ¶ 9.) The weapon had been constructed from a piece of an inmate typewriter. *Id.* ¶ 10. After this incident, Debra Brooks, Associate Warden of Operations at ESP, requested that all typewriters be banned at ESP because the possession of typewriters aids the ability of inmates to breach safety and security. *Id.* ¶ 11.

On March 17, 2007, NDOC announced that inmates housed at ESP would not be permitted to possess personal typewriters. *Id.* ¶ 12. On May 15, 2007, James G. Cox, Deputy Director/Operations in the NDOC, announced that the ban on typewriters would be extended to all NDOC facilities and institutions. *Id.* ¶ 16. The court takes judicial notice that as a result of this ban, numerous inmates have initiated actions arguing that the ban on typewriters is unconstitutional. *See* Fed.R.Evid. 201.

The present action was filed on June 8, 2007. NDOC is seeking a declaratory judgment stating that NDOC has the legal right to declare typewriters unauthorized property. NDOC is also seeking a declaratory judgment stating that the ban on inmate possession of typewriters does not violate the Constitution of the United States.

## II. Legal Standard

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799

F.2d 254, 259 (6th Cir.1986); *see also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D.Cal.2001). For those issues where the moving party will not have the burden of proof at trial, the movant must point out to the court "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548.

In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir.2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir.1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252, 106 S.Ct. 2505.

## III. Discussion

### A. NDOC's Motion for Summary Judgment

NDOC argues that summary judgment is appropriate in this case because inmates have no constitutional right to possess a typewriter while incarcerated. NDOC further argues that this court should defer to the decision of NDOC. Downs opposes summary judgment arguing that inmates have a protected interest in their typewriters that cannot be deprived without due process of law. In addition, Downs argues that the typewriter ban denies inmates access to the courts.

### 1. Due Process

Downs first argues that he was deprived of his property without Due Process of law. The Due Process Clause of the Fourteenth Amendment protects against deprivations of "life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. An inmate must have a constitutionally protected interest in order to trigger due process protection. *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 463, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981). Thus, before analyzing whether inmates were deprived of their property without due process of law, the court must first determine whether there is a liberty or property interest that has been interfered with by the State. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

Prisoners retain certain property interests despite the reality of incarceration. For example, courts have held that inmates have a constitutionally protected property right in hobby kits ordered while in prison, *Parratt v. Taylor*, 451 U.S. 527, 536, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), accrued interest on an inmate account, *Vance v. Barrett*, 345 F.3d 1083, 1089 n. 6 (9th Cir.2003), and books. *Caldwell v. Miller*, 790 F.2d 589, 608 (7th Cir.1986). Like a hobby kit or a book, the court finds that inmates do have a property interest in the ownership of their personal typewriters.

Nevertheless, the fact that prisoners have a property interest in their personal typewriters does not necessarily mean that prisoners have a right to possess

their typewriters while incarcerated. Section 209.239 of the Nevada Revised Statutes provides for the regulation of the personal property of offenders. Section 209.239 provides, "[s]ubject to the approval of the Director, the warden of each institution and the manager of each facility shall adopt and issue a written policy statement regulating the personal property to which an offender may retain in his possession...." Nev.Rev.Stat. § 209.239. Pursuant to Nevada law, NDOC enacted Administrative Regulation 711 ("AR 711") to govern inmate personal property. *See* AR 711. AR 711.01 provides that institutions and facilities will not permit the possession of personal property that is considered contraband. Contraband is defined, in part, as "[a]ny item or article of property that poses a serious threat to the security of an institution and ordinarily never approved for possession or admission into the institution, and any item or article which may be, or has been authorized for possession at one time, but now is prohibited for possession due to health, fire or safety concerns." AR 711. AR 711 further provides that inmates are to be "advised of the personal property items, which may be retained in his possession." *Id.* The regulation is made available to inmates during the intake process and when it is updated. *Id.* Pursuant to AR 711, typewriters are contraband as they were authorized for possession at one time, but later prohibited for safety concerns.

■ To the extent NDOC's ban on typewriters may deprive inmates of their property, the court finds no violation of due process. "'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Bell v. Wolfish*, 441 U.S. 520, 545–46, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (quoting *Price v. Johnston*, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948)). "The curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of 'institutional needs and objectives' of prison facilities, chief among which is internal security." *Hudson v. Palmer*, 468 U.S. 517, 524, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (internal citations omitted). As with other constitutional rights, "'the due process rights of prisoners are not absolute, but must be accommodated to the legitimate security needs of a corrections institution.'" *Golden v. McCaughtry*, 937 F.Supp. 818 (E.D.Wis.1996) (quoting *Caldwell*, 790 F.2d at 609 (7th Cir.1986)).

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Several factors are relevant in determining whether a regulation is reasonable. *Id.* "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* (quoting *Block v. Rutherford*, 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984)). The second factor to consider is "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90, 107 S.Ct. 2254. Third, the court considers "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.* (citing *Rutherford*, 468 U.S. at 587, 104 S.Ct. 3227).

Applying the analysis to the case at bar, the court finds that the record demonstrates that the NDOC ban on typewriters is reasonably related to legitimate security interests. The State has "'a compelling

interest in maintaining security and order in its prisons and, to the extent that it furthers this interest in reasonable and non-arbitrary ways, property claims by inmates must give way.' " *Harris v. Forsyth*, 735 F.2d 1235 (11th Cir.1984) (quoting *Sullivan v. Ford*, 609 F.2d 197 (5th Cir.1980)). The ban on typewriters occurred because prison officials determined that possession of typewriters aid the ability of inmates to breach safety and security. (Mot. for Summ. J. (# 19), Decl. of Debra Brooks, Ex. C ¶ 6.) Specifically, typewriter parts can be used as weapons. (Mot. for Summ. J. (# 19), Aff. of James G. Cox, Ex. B ¶ 4.) Furthermore, no alternative has been identified that could be implemented without the use of significant prison resources. Thus, to the extent prisoners are deprived of their property while in prison, the court finds no violation of due process.

In addition to arguing the typewriter ban deprives prisoners of due process, Downs argues that his personal circumstances require that he be allowed to retain possession of his typewriter. Specifically, Downs argues he has a nerve condition in his right arm that causes him excruciating pain when he writes by hand for more than five or ten minutes at a time. According to Downs, his condition makes hand writing painful and time consuming.

To support his claim, Downs attached progress notes from his physician. In describing Downs's symptoms, the progress notes contain the following entry on November 28, 2007:

> Patient continues to have pain and tingling in his right arm. This occurs at night but also occurs when he tries to write. Patient states he did not have this problem when he was able to use a typewriter. His present problem was triggered by having to manually write his work.

(Reply to Resp. to Mot. for Reconsideration (# 58), Progress Notes.) To treat Downs's condition, the progress notes indicate that Downs should "avoid situations that cause pain." *Id.*

The court finds that Downs has failed to show any violation of his constitutional rights as a result of his medical condition. Although the medical evidence shows that Downs has complained of pain, the physician did not indicate that Downs's condition necessitates a typewriter. Downs's points and authorities indicate that he experiences excruciating pain if he writes for more than five or ten minutes. Thus, it appears that Downs is capable of writing for periods of less than five or ten minutes at a time. Although hand writing may be time consuming, Downs has demonstrated his ability to hand write documents by filing numerous documents in this case. Thus, no evidence has been provided to this court that would necessitate a ruling allowing Downs to possess his typewriter.

**2. Access to the Courts**

■ Downs next argues that the typewriter ban violates inmates' constitutional right to access the courts. NDOC argues such a claim is futile because no court in Nevada requires inmates to file typewritten documents. In addition, NDOC argues that Downs cannot show that he has actually been denied access to the courts as a result of the ban on typewriters.

State prisoners have a right to access the courts under the First and Fourteenth Amendments to the United States Constitution. *Phillips v. Hust*, 477 F.3d 1070, 1075 (9th Cir.2007) (citing *Lewis v. Casey*, 518 U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). " '[A]ccess to the courts means the opportunity to prepare, serve and file whatever pleadings or other documents arc necessary or appropriate in order to commence or prosecute court pro-

ceedings affecting one's personal liberty.'" *Id.*

The Supreme Court has identified two categories of cases regarding the denial of access to the courts. *Christopher v. Harbury,* 536 U.S. 403, 412–13, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). "In the first are claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Id.* at 413, 122 S.Ct. 2179. These cases are referred to as "forward-looking claims." *Id.* at 415, 122 S.Ct. 2179. "The second category covers claims in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." *Id.* at 413–14, 122 S.Ct. 2179. This category of cases is referred to as "backward-looking claims." *Id.* at 415, 122 S.Ct. 2179.

■ A backward-looking denial of access claim requires Downs to show: "1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." *Phillips,* 477 F.3d 1070, 1076 (9th Cir.2007) (citing *Harbury,* 536 U.S. at 413–14, 122 S.Ct. 2179.) In this case, Downs has failed to show the loss of an underlying claim. This element goes to a plaintiff's standing to bring suit. *Id.* In order to assert a claim arising from the denial of access to the courts, an inmate must show actual injury. *Lewis,* 518 U.S. at 349–50, 116 S.Ct. 2174. Thus, Downs has failed to demonstrate a viable backward-looking denial of access claim.

■ With respect to forward-looking claims, "[t]he Supreme Court's jurisprudence ... reveals at least two necessary elements: an arguable underlying claim and present foreclosure of a meaningful opportunity to pursue that claim." *Broudy v. Mather,* 460 F.3d 106, 120–21

(D.C.Cir.2006). In this case, Downs has not identified any non-frivolous arguable underlying claim that he wishes to pursue. Furthermore, Downs has failed to identify the present foreclosure of a meaningful opportunity to pursue the claim. In support of his claim, Downs argues the Federal Rules of Appellate Procedure require documents to be typed. Downs further argues that Rule 33 of the Supreme Court Rules require all documents to be typed. Nevertheless, Downs has not demonstrated the present need to file documents with any appellate court.

As this court has determined that NDOC's ban on typewriters does not deprive inmates of their property without due process of law and Downs has failed to show the denial of the right to access the courts, Downs's motion for reconsideration of this court's order denying his request for a preliminary injunction will be denied.

### B. Greene and Browning's Motion for Summary Judgment

On May 8, 2008, this court permitted Greene and Browning to intervene in this action. Greene and Browning subsequently filed a motion for summary judgment arguing that the ban on typewriters violates inmates' First Amendment and Fifth Amendment rights.

#### 1. The First Amendment

■ Greene and Browning First argue the ban on typewriters violates inmates' First Amendment rights. At the outset, the precise nature of Greene and Browning's First Amendment claim is unclear. Greene and Browning argue that NDOC's decision to ban typewriters was based upon a desire to discourage inmate litigation and to mitigate damages in an impending wrongful death suit. However, Greene and Browning contend that their claim is not a typical retaliation claim. Yet,

Greene and Browning also state that they are not asserting an access to the courts claim. In the absence of a retaliation claim or access to the courts claim, it is not clear that the actions alleged by Greene and Browning implicate the First Amendment. NDOC argues that Greene and Browning cannot show the ban was placed on typewriters because inmates were involved in litigation. In addition, NDOC argues the ban advances a legitimate penological interest.

 To the extent Greene and Browning are asserting a retaliation claim, the court finds that the ban on typewriters reasonably advances a legitimate correctional goal. Prisoners retain First Amendment rights despite their incarceration. For example, prisoners have the right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson,* 408 F.3d 559, 567 (9th Cir.2005) (citations omitted). A First Amendment retaliation claim in the prison context consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* (footnote and citations omitted). Courts "should 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland,* 65 F.3d 802, 807 (9th Cir.1995) (quoting *Sandin v. Conner,* 515 U.S. 472, 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). The party asserting retaliation bears the burden of proving the absence of a legitimate correctional goal. *Id.* at 806.

As previously discussed, NDOC has provided evidence that prison officials determined that possession of typewriters aid the ability of inmates to breach safety and

security. (Mot. for Summ. J. (# 19), Decl. of Debra Brooks, Ex. C ¶ 11.) Specifically, evidence on the record shows that typewriter parts can be used as weapons. (Mot. for Summ. J. (# 19), Aff. of James G. Cox, Ex. B ¶ 4.) It cannot be disputed that the State has a legitimate interest in maintaining security and order in its prisons. *See Harris,* 735 F.2d at 1235. Thus, the evidence shows the typewriter ban reasonably advances a legitimate correctional goal. The ban helps maintain security and safety by eliminating potential weapons from the prison population.

Greene and Browning argue that the ban was enacted in order to make inmate litigation more labor intensive. As evidence, Greene and Browning claim NDOC has made it more difficult for inmates to conduct legal research. Greene and Browning further argue the efforts of NDOC to discourage inmate litigation occurred in early 2006 after the media allegedly reported an increase in prisoner lawsuits. Despite these allegations, Greene and Browning have explicitly stated they are not challenging the ban as a denial of their right to access the courts. Furthermore, Greene and Browning have failed to provide evidence showing the ban on typewriters does not advance the legitimate correctional goal of increasing safety in the prison. Greene and Browning's speculation as to the motive behind the typewriter ban is insufficient to rebut the evidence produced by NDOC showing a legitimate correctional goal.

To the extent Greene and Browning are asserting an access to the courts claim, the intervenors have not demonstrated any actual injury nor have intervenors identified any non-frivolous arguable underlying claim that they wish to pursue. As a result, Greene and Browning have failed to create a genuine issue of material fact with respect to any access to the courts claim.

Finally, even if Greene and Browning could show that the ban on typewriters impinged upon their First Amendment rights, the court would find that the ban is valid as it reasonably relates to a legitimate penological interest as discussed in part III(A)(1) above. *See Turner*, 482 U.S. at 89, 107 S.Ct. 2254. For the foregoing reasons, Greene and Browning's motion for summary judgment asserting a violation of the First Amendment will be denied.

## 2. The Fifth Amendment

The Fifth Amendment to the United States Constitution provides, in part, that no private property shall be taken for public use without just compensation. U.S. Const. amend. V. The Fifth Amendment is made applicable to state governments through the due process clause of the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). The Fifth Amendment takings clause "limits the government's ability to confiscate property without paying for it." *Vance v. Barrett*, 345 F.3d 1083, 1089 (9th. Cir.2003).

The court has already found that NDOC did not violate the constitution by banning typewriters. Thus, the threshold question this court must answer is whether the ban constituted a taking within the meaning of the Fifth Amendment.

A taking can occur "through the government's physical invasion or appropriation of private property." *Huntleigh USA Corp. v. U.S.*, 525 F.3d 1370, 1378 (Fed. Cir.2008), *Yee v. City of Escondido*, 503 U.S. 519, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) ("Where the government authorizes a physical occupation of property (or actually takes title), the Takings Clause generally requires compensation.") (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73

L.Ed.2d 868 (1982)). In addition, a taking can occur if a regulation "denies all economically beneficial or productive use" of the property interest. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (citations omitted).

■ In this case, the court finds that no taking occurred. NDOC gave prisoners several options to dispose of the typewriters. Prisoner's could (1) ship or mail their typewriters out of the prison at their expense, (2) have the typewriters destroyed by the property officer, (3) donate the typewriter to charity, or (4) appeal the decision through the inmate grievance process. (Defs.' Mot. for Summ. J. (# 88), Unauthorized Property Notification, Ex. 9.) Thus, the NDOC did not appropriate the prisoners' private property. Rather, the prison regulated what property prisoners could legitimately possess while incarcerated and offered prisoners three options to dispose of their property. Greene and Browning argue that NDOC subsequently withdrew the options listed above. In a May 8, 2007, Memorandum, purportedly from ESP administration, ESP allegedly indicated it would hold the typewriters in the property room. (Defs.' Mot. for Summ. J. (# 88), May 8, 2007, Memorandum, Ex. 9.) However, this unauthenticated document also indicates that prisoners should let ESP know if they still wished to ship, donate, or destroy their typewriters. *Id.* Thus, even if the May 8, 2007, Memorandum were admissible, it does not show that a taking occurred.

Furthermore, the decision to ban typewriters did not deprive prisoners of all economically beneficial use of the typewriters because the typewriters could still be used for any purpose outside the prison walls. The fact that prisoners may not use the typewriters while incarcerated does not change this conclusion. As previously

discussed, NDOC's regulation on what property prisoner's can possess while incarcerated is reasonably related to a legitimate penological interest. *See Turner*, 482 U.S. at 89, 107 S.Ct. 2254.

### C. Greene and Browning's Motion to Strike

Greene and Browning argue this court should strike NDOC's exhibits incorporated from NDOC's motion for summary judgment because Greene and Browning were not permitted to respond to NDOC's motion for summary judgment. In addition, Greene and Browning have specific evidentiary objections to NDOC's exhibits.

The court will deny the motion. The only issues relevant to Greene and Browning's motion for summary judgment relate to the First Amendment and the Fifth Amendment. The court will consider any admissible evidence submitted by NDOC that relates to those arguments. To the extent the court considered evidence objected to by Greene and Browning, those objections are overruled. To the extent the court did not consider evidence objected to by Greene and Browning, Greene and Browning's motion will be denied as moot.

IT IS THEREFORE ORDERED that NDOC's Motion for Summary Judgment (# 19) is hereby GRANTED. NDOC has the right to declare typewriters unauthorized property. Furthermore, NDOC's ban on typewriters does not violate prisoners' rights under the Due Process clause of the Fourteenth Amendment, the First Amendment, or the Takings Clause of the Fifth Amendment.

IT IS FURTHER ORDERED that Downs's Motion for Reconsideration (# 30) is hereby DENIED.

IT IS FURTHER ORDERED that Downs's Request for Ruling (# 68) is hereby DENIED as moot.

IT IS FURTHER ORDERED that Downs's Motion to Strike Response (# 72) is hereby GRANTED in part and DENIED in part. Downs's motion to strike NDOC's reply points and authorities is DENIED. To the extent Downs wishes this court to consider his surreply, his motion is GRANTED. The court has fully considered Downs's points and authorities in this order.

IT IS FURTHER ORDERED that Greene and Browning's Motion to Strike (# 99) is hereby DENIED.

IT IS FURTHER ORDERED that Greene and Browning's Motion for Summary Judgment (# 88) is hereby DENIED.

The Clerk of the court shall enter judgment accordingly.

IT IS SO ORDERED.